870 P.2d 663

**PONDEROSA PAINT MANUFACTUR-
ING, INC., an Idaho corporation,
Plaintiff–Respondent,**

v.

**Linda YACK, Individually, Martin Yack,
Individually, Defendants–Appellants.**

No. 19976.

Court of Appeals of Idaho.

Feb. 16, 1994.

Petition for Review Denied April 7, 1994.

Webb, Pedersen & Webb, Twin Falls; Lloyd J. Webb argued for defendants-appellants.

Hamlin & Sasser, Boise; James D. Carlson argued for plaintiff-respondent.

LANSING, Judge.

This is an appeal from a district court judgment in favor of Ponderosa Paint Manufacturing, Inc., holding Linda and Martin Yack liable as guarantors for debts incurred by two corporations. The Yacks appeal, asserting error in the following rulings of the district court: (1) denial of the Yacks' motion to change venue; (2) denial of their motion to dismiss for lack of personal jurisdiction; (3) denial of their motion to dismiss on grounds that they had been discharged as guarantors of a portion of the debts claimed by Ponderosa; (4) granting of summary judgment against the Yacks; and (5) denial of Yacks' motion to set aside the judgment pursuant to I.R.C.P. 60(b). We affirm.

Ponderosa Paint Manufacturing, Inc. ("Ponderosa") is an Idaho corporation. For a number of years, Ponderosa sold paint and paint supplies to two separate businesses: Pocatello Auto Color Inc. ("PACI"), an Idaho corporation, and Pocatello Industrial Paint, Inc. ("PIPI"), a Utah corporation. Both PACI and PIPI maintained open accounts with Ponderosa. Linda and Martin Yack are residents of Utah. At the time of the transactions giving rise to this action, Linda Yack was president of PACI and PIPI.

In February 1988, PACI executed a promissory note in the amount of $13,423.66, payable to Ponderosa in monthly installments. At about the same time, Linda and Martin Yack signed a personal guaranty of all present and future debts owed by PACI to Ponderosa. In March 1988, a similar promissory note in the amount of $17,650 was executed by PIPI, and the Yacks also signed a guaranty of all PIPI's present and future obligations to Ponderosa.

In November 1990, Ponderosa filed suit in the district court in Ada County against PACI, PIPI and Linda and Martin Yack, alleging defaults on PACI's and PIPI's obligations guarantied by the Yacks. Counts One and Two of the complaint sought recovery from PACI and PIPI of their respective debts. Count Three alleged a claim against

the Yacks as guarantors of those debts. After rejecting a series of motions by the defendants, the district court ultimately entered summary judgment against the Yacks. A subsequent motion by the Yacks to vacate the summary judgment pursuant to I.R.C.P. 60(b) was also denied. The Yacks appeal from the judgment and also allege error in the denial of their various motions.

## I. Venue

■ On December 20, 1990, PACI and the Yacks filed a motion for change of venue from Ada County to Bannock County. They asserted that venue was proper in Bannock County under I.C. § 5–404[1] because PACI, the sole Idaho resident defendant, had its principal place of business in Bannock County. The defendants did not schedule a hearing on the motion. On January 3, 1991, before any of the defendants had filed an answer or a motion for summary judgment, Ponderosa voluntarily dismissed defendant PACI from the lawsuit by filing a notice of dismissal pursuant to I.R.C.P. 41(a)(1). At Ponderosa's initiative, a hearing on the motion for change of venue was finally scheduled for May 8, 1991. The motion was denied.

The Yacks acknowledge that if it was permissible for the district court to disregard PACI's principal place of business when it ruled upon the venue motion, denial of the motion was not error, for all of the remaining defendants were nonresidents. Under I.C. § 5–404, "if none of the defendants reside in the state ... the [action] may be tried in any county which the plaintiff may designate in his complaint...."

The Yacks contend, however, that even though PACI had been dismissed as a defendant prior to the hearing on the venue motion, its place of business continued to be determinative of proper venue. They argue that a motion to change venue must be decided upon the pleadings as they stand at the time the motion is interposed. They contend that at the time the motion for change of venue was filed, PACI was a named defendant in the lawsuit and, therefore, PACI's principal place of business should have remained a relevant consideration in the trial court's determination of proper venue. The issue thus presented is one of law over which we exercise free review.

Ponderosa's dismissal of PACI from the lawsuit was based on I.R.C.P. 41(a)(1) which provides:

> Subject to the provisions of Rule 23(e), of Rule 73, and of any statute of the state of Idaho an action may be dismissed by the plaintiff without order of the court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever occurs first, .... Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this state, of the United States, or of any state an action based on or including the same claim.

When Ponderosa filed the notice of dismissal, none of the defendants had filed either an answer or a motion for summary judgment. Therefore, at that point in the proceeding voluntary dismissal under 41(a)(1) was a matter of right; it was not necessary for Ponderosa to obtain the court's consent.[2] *Rohr v. Rohr*, 118 Idaho 689, 692, 800 P.2d 85, 88

---

1. 5–404. Other actions—Venue determined by residence—Exceptions.—In all other cases the action must be tried in the county in which the defendants, or some of them, reside, at the commencement of the action; or, if none of the defendants reside in the state, or, if residing in this state, the county in which they reside is unknown to the plaintiff, the same may be tried in any county which the plaintiff may designate in his complaint; ... provided, ... that in all actions against any corporation organized under the laws of the state of Idaho, suit or action shall be commenced and tried in any county of this state where the defendant has its principal place of business or in the county in which the cause of action arose.

2. We note that there is a split among the federal courts regarding whether Rule 41(a)(1) of the Federal Rules of Civil Procedure authorizes dismissal of a single party or only authorizes dismissal of an entire action. Because the Yacks do not contend that the dismissal of PACI, alone, was impermissible under the rule, we need not decide this issue.

(1990); citing 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCE- DURE: CIVIL § 2363 (1971). We note also that in *Spencer v. Ensign*, 33 Idaho 577, 196 P. 668 (1921), interpreting a statutory prede- cessor to Rule 41(a)(1), our Supreme Court held that the right to voluntarily dismiss an action is not affected by the prior filing of a motion for a change of venue. Accordingly, Ponderosa had the right to dismiss its claim against PACI in January 1991, after the de- fendants had filed their motion to change venue.

The Yacks contend that denial of their venue motion was error because there is a "universal rule" that a motion to change ven- ue is determined by the pleadings as they stand at the time the motion is interposed. However, the cases cited by the Yacks in support of this proposition are factually inap- posite and generally predate adoption of modern procedural rules.

On May 8, when the district court enter- tained argument on the motion for change of venue, PACI had been dismissed from the lawsuit for over four months. We perceive no reason why a trial court, when determin- ing proper venue under I.C. § 5–404, should take into consideration the residence of a former defendant who is no longer a party to the litigation.

This conclusion is not only consistent with a plaintiff's right to voluntarily dismiss claims under Rule 41(a)(1), but also recog- nizes certain practicalities. If Ponderosa's dismissal of PACI had been ignored for pur- poses of the venue motion—as the Yacks contend it should have been—and the district court had, therefore, transferred venue to Bannock County, Ponderosa could have sim- ply dismissed this action. It could have im- mediately filed a new action in Ada County, omitting PACI as a defendant, with the con- sequence that venue in Ada County as to the second action would have been unassailable. We see little point in adopting a doctrine, as urged by the Yacks, that could be so readily circumvented and would have so little prac- tical effect upon the rights of the parties.

■ Because none of the remaining defen- dants were residents of Idaho when the trial court ruled on the venue motion, venue in Ada County was proper, and the court did not err in denying the motion to transfer the action to Bannock County.

## II. Personal Jurisdiction

Count Three of Ponderosa's complaint sought to recover against the Yacks on their guaranties of PACI's and PIPI's debts. On May 23, 1991, Linda and Martin Yack, as Utah residents, filed a motion to dismiss pursuant to I.R.C.P. 12(b)(2) asserting lack of personal jurisdiction. The district court denied the motion, and the Yacks challenge this denial on appeal.

■ Preliminarily we note that the Yacks were not entitled to file a motion to dismiss for lack of personal jurisdiction after having previously moved for change of venue. In the motion for change of venue, the Yacks stated:

This motion for Change of Venue should not be construed as a general appearance on behalf of the Defendants Linda Yack and Martin Yack, who do not consent to the jurisdiction of the Court, and preserve the right to address motions to dismiss to this Court based upon a lack of jurisdiction over those Defendants.

The Idaho Rules of Civil Procedure do not allow a party to "preserve the right" to ob- ject to personal jurisdiction at a later date when filing a motion for change of venue under 12(b)(3). A Rule 12(b)(2) motion rais- ing a defense of lack of personal jurisdiction must be joined with any other Rule 12(b) defenses or objections in the first pre-answer motion or in the answer if no Rule 12(b) pre- answer motion is filed. If the Rule 12(b)(2) defense is not joined, it is waived. I.R.C.P. 12(g), 12(h)(1); *Donaldson v. Donaldson*, 111 Idaho 951, 729 P.2d 426 (Ct.App.1986). Fur- ther, I.R.C.P. 4(i) provides that "[t]he volun- tary appearance of a party or service of any pleading by the party, except a motion under Rules 12(b)(2), (4) or (5) ... constitutes vol- untary submission to the personal jurisdic- tion of the court." Thus, by filing a motion for change of venue without joining the mo- tion to dismiss for lack of personal jurisdic- tion, it appears the Yacks waived the defense of lack of personal jurisdiction. However,

because Ponderosa did not argue that the Yacks waived their challenge to jurisdiction, either before the district court or on appeal, we will address the merits of the jurisdiction issue.

■ The Yacks filed no affidavits with their motion to dismiss for lack of jurisdiction and did not request an evidentiary hearing. Therefore, we treat their motion, as did the district court, as a challenge to the sufficiency of the complaint to allege personal jurisdiction. A motion questioning the adequacy of a pleading presents a question of law over which we exercise free review. *Ernst v. Hemenway & Moser, Co., Inc.,* 120 Idaho 941, 946, 821 P.2d 996, 1001 (Ct.App.1991).

.If Ponderosa's complaint alleged facts that would give rise to personal jurisdiction, the Yacks' motion to dismiss was properly denied. *See Marco Distributing, Inc. v. Biehl,* 97 Idaho 853, 857, 555 P.2d 393, 397 (1976). We conclude that the complaint here adequately alleges facts which, if proven true, establish personal jurisdiction over the Yacks in Idaho.

■ First, the verified complaint alleges that the Yacks were doing business in the state of Idaho and, specifically, that they solicited and sold paint and painting supplies in the state of Idaho for the purpose of enhancing the business purposes and objectives of the defendants. These allegations are sufficient to allege that the Yacks were subject to the jurisdiction of the courts of this state pursuant to our long-arm statute, I.C. § 5–514(a), which provides that Idaho courts may exercise jurisdiction over those who engage in "the transaction of any business within this state."

Second, the guaranties executed by the Yacks were attached to the verified complaint as exhibits and incorporated into the complaint by reference. The guaranties contain clauses by which the Yacks consented to the jurisdiction of Idaho courts in any action

on the guaranties. Each of the guaranties specified, "The undersigned also agree that any action to enforce this guaranty may be brought in the Fourth District Court of the state of Idaho." It is well-established that parties to a contract may agree in advance of litigation to submit to the personal jurisdiction of a given court.[3] *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77 (9th Cir.1987); *Bowles v. J.J. Schmitt & Co. Inc.,* 170 F.2d 617, 621–22 (2nd Cir.1948); *Morgan Bank (Delaware) v. Wilson,* 164 Ariz. 535, 537, 794 P.2d 959, 961 (1990).

On their motion to dismiss, the Yacks did not.question the authenticity or validity of the guaranties or the clarity of the clauses therein by which the Yacks consented to be subject to suit in Idaho. Therefore, the consents to jurisdiction in the guaranties provided further basis for denial of the Yacks' motion to dismiss for lack of personal jurisdiction.

### III. Motion to Dismiss the Claim against the Yacks as Guarantors of PACI's Debts

The Yacks next claim error in the district court's denial of their motion pursuant to I.R.C.P. 12(b)(6) to dismiss Ponderosa's claim predicated upon the Yacks' guaranty of PACI's debts. This motion was filed after Ponderosa dismissed PACI from the action. The Yacks argue that Ponderosa released the principal debtor, PACI, from liability by dismissing the cause of action against PACI, and, therefore, Ponderosa was precluded from recovering against the Yacks as guarantors.

■ It is a well-accepted common law rule that "satisfaction of the principal debt or a release of the principal debtor discharges the guarantor,"[4] *McGill v. Idaho Bank &*

---

3. This is not a forum selection clause such as that found to be violative of I.C. § 29–110 in *Cerami–Kote, Inc. v. Energywave Corp.,* 116 Idaho 56, 773 P.2d 1143 (1989). The clauses in the Yacks' guaranties do not purport to limit the parties to bringing suit only in Ada County and

do not attempt to oust any other court of jurisdiction.

4. We note that this rule will no longer apply to a guarantor who is deemed an "accommodation party" under I.C. §§ 28–3–419(5) and 28–3–605(2). *See also* Official Comment 3 to § 28–3–

*Trust Co.,* 102 Idaho 494, 497, 632 P.2d 683, 686 (1981). However, the Yacks incorrectly equate dismissal of PACI from the lawsuit with release of PACI as an obligor.

Ponderosa dismissed PACI from the lawsuit pursuant to I.R.C.P. 41(a)(1) which provides that "[u]nless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice ..." Ponderosa's notice of dismissal was silent on the subject of prejudice. Thus, while the dismissal terminated PACI's participation in the present action, it did not bar a second suit against PACI. By contrast, a release is "[t]he relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced." BLACK'S LAW DICTIONARY 1289 (6th ed. 1990). It is clear that Ponderosa did not release its claim against PACI as the principal debtor and, therefore, the Yacks were not discharged as guarantors. Accordingly, the district court did not err in denying the Yacks' motion to dismiss.

## IV. Summary Judgment Motion

The court below granted summary judgment to Ponderosa against the Yacks. The Yacks assert that a number of procedural errors were committed in connection with that motion. An understanding of these contentions requires that we outline the chronology of events associated with the summary judgment motion.

On November 27, 1991, Ponderosa filed and served by mail a motion for summary judgment against the Yacks. The motion was scheduled for hearing on January 8, 1992. No briefs or supporting affidavits were served with the summary judgment motion.

Also on November 27, 1991, Ponderosa served a motion to amend its complaint along with a copy of the proposed amended complaint. The proposed amended complaint deleted PACI as a defendant, consistent with the earlier dismissal of PACI from the lawsuit. Count One of the complaint was changed from an action on PACI's promissory note to a claim based upon a previously unmentioned 1986 personal guaranty by the Yacks of the same PACI obligations covered by their 1988 guaranty of PACI's debts. The amount of PACI's guarantied debt alleged in the new Count One was $17,648.81, precisely the same amount as PACI's guarantied indebtedness alleged in the original complaint. Counts Two and Three of the amended complaint remained unchanged.

On December 11, 1991, the Yacks and PIPI consented in writing to the filing of the amended complaint.

Also on December 11, Ponderosa served by mail an affidavit and memorandum of law in support of the motion for summary judgment.

On January 8, 1992, the scheduled hearing on the summary judgment motion was conducted. The Yacks did not, before or during the hearing, file any affidavits or other evidence or any brief opposing the motion. At the hearing, counsel for the Yacks orally moved for a continuance of the hearing. The request for a continuance was based upon personal circumstances of the Yacks' counsel which, he said, prevented him from being prepared to respond to the summary judgment motion. He explained that on December 3, 1991, while the motion for summary judgment was pending, his brother was killed in an accident. The attorney indicated that as a consequence of mental turmoil stemming from his brother's death, together with his absence from his office in December for a holiday visit with relatives on the east coast, and incapacitation from influenza contracted in late December, he had not had sufficient time to prepare a response to Ponderosa's summary judgment motion. The Yacks' attorney did not comply with I.R.C.P. 56(f) by submitting an affidavit setting forth the reasons for his request for a continuance.

605. These statutes are within Article 3 of the Uniform Commercial Code, as adopted in Idaho and revised in 1993. Act of March 31, 1993, ch. 288, 1993 Idaho Laws 1019. Because the transactions here occurred before adoption of these revisions to the UCC, we do not consider the statutes' application in the present case.

At the hearing, the district court denied the Yacks' motion for a continuance and announced its decision to grant summary judgment to Ponderosa. However, the district court invited the Yacks to file a motion pursuant to I.R.C.P. 60(b) to set aside the judgment, with a proper presentation through affidavits and legal memoranda stating the reasons for their failure to timely respond to the summary judgment motion.

A written order granting summary judgment was entered on January 15, 1992. Six days later the Yacks filed a motion pursuant to Rule 60(b) requesting that the judgment be vacated on grounds of excusable neglect of counsel.

The Yacks now complain of the following procedural irregularities in the presentation of Ponderosa's summary judgment motion: (1) the Yacks assert there was ambiguity as to whether the motion for summary judgment was predicated upon Ponderosa's original complaint or upon its amended complaint; and (2) the Yacks contend that summary judgment ought not to have been granted because Ponderosa's motion did not comply with the time requirements of I.R.C.P. 56. We address each allegation in turn.

### A. *Ambiguity in Motion*

The Yacks first assert there was a lack of clarity as to whether the motion for summary judgment sought judgment upon Ponderosa's original complaint or its amended complaint. This ambiguity arises from Ponderosa's filing a motion to amend its complaint on the same day that it filed its summary judgment motion. The Yacks consented to the filing of the amended complaint on December 11, 1991. Hence, when the summary judgment motion was filed, the original complaint was operative, but before the hearing on the motion, the original complaint was superseded by the amended complaint. While it would have been preferred practice for Ponderosa to have amended its complaint before filing the summary judgment motion, we find no prejudice to the Yacks. The two complaints are very similar with respect to the claims alleged against the Yacks, and the amounts claimed in the two complaints are identical. Although the amended complaint referenced a 1986 guaranty that was not previously mentioned, the amendment did not alter the amount of the allegedly guarantied obligations but merely asserted another guaranty of the same debts of PACI for which recovery was also sought under the 1988 guaranties. Hence, the reference to the 1986 guaranty was merely cumulative. The Yacks have not pointed out any manner in which the introduction of the amended complaint confused, misled or hampered them in their ability to respond to Ponderosa's summary judgment motion. Accordingly, we find no grounds to reverse the summary judgment arising from the filing of the amended complaint.

### B. *Timeliness of Service*

The Yacks next complain that Ponderosa violated I.R.C.P. 56(c), which requires that a summary judgment motion, affidavits and supporting brief be served at least 28 days in advance of the hearing. The opposing party is then required to serve its response at least 14 days before the hearing.

The Yacks are correct in observing that Ponderosa did not comply with this rule. The Rule 56(c) time frames for service are supplemented by the provision of Rule 6(e)(1) that a party who is served by mail must be allowed an additional three days within which to respond. *See Jarman v. Hale,* 112 Idaho 270, 271, 731 P.2d 813, 814 (Ct.App.1986) (applying Rule 6(e)(1) and former Rule 56(c), which then required that a summary judgment motion be served at least ten days before the hearing). Thus, when a motion for summary judgment and supporting documentation are served by mail, they must be mailed at least 31 days in advance of the hearing. Here, although Ponderosa mailed its summary judgment motion about six weeks in advance of the hearing, it did not mail its supporting affidavit and brief until 28 days before the hearing. Therefore, Ponderosa did not allow the minimum time for responsive affidavits and briefing mandated by Rule 56(c).[5]

---

**5.** Having concluded that Ponderosa failed to comply with Rule 56(c), we find it unnecessary to

Our conclusion that the motion for summary judgment and supporting affidavit were not timely served does not, however, require reversal of the summary judgment. Rule 61, I.R.C.P., provides that no error or defect in the conduct of the court or of the parties constitutes a ground for vacating a judgment or order unless the refusal to take such action "appears to the court inconsistent with substantial justice." The rule directs that the court at every stage of the proceeding must disregard any error that does not affect the substantial rights of the parties. Thus, Rule 61 essentially embodies the precept that an appellate court will not grant relief for harmless error.

Although the Yacks contend they had insufficient time to prepare a response to the summary judgment motion, particularly in light of the personal problems that confronted their counsel during December 1991, they have not demonstrated that, if given additional time, they could have submitted evidence or legal argument that would have prevented entry of the summary judgment against them. As discussed below in Section V of this opinion, the Yacks presented their asserted defenses with their Rule 60(b) motion to set aside the summary judgment. The merit of Ponderosa's summary judgment motion was essentially addressed anew and reargued on the Yacks' motion to vacate the judgment. At oral argument on this appeal, the Yacks' attorney acknowledged that there was no evidence that the Yacks could have presented in opposition to the summary judgment motion, if allowed more time, which they were unable to present in support of their Rule 60(b) motion. For reasons elaborated below, we conclude that the defenses asserted by the Yacks on their Rule 60(b) motion are not valid and do not present either facts or principles of law that could defeat Ponderosa's right of recovery. Accordingly, the Yacks were not prejudiced by the untimely service of Ponderosa's summary judgment affidavit and brief.

### V. Rule 60(b) Motion for Relief from Judgment

We thus arrive at the final issue raised by the Yacks—whether it was error for the district court to deny their motion to set aside the summary judgment. The Yacks sought to vacate the judgment pursuant to I.R.C.P. 60(b)(1) on the ground that their failure to present adequate opposition to the summary judgment motion arose from excusable neglect of counsel.

An affidavit of the Yacks' attorney was filed in support of the motion, setting out the personal circumstances referenced above. The motion was also supported by an affidavit of Linda Yack, which disputed that the amounts claimed by Ponderosa were covered by the Yacks' personal guaranties. Without reaching the issue of whether the Yacks had demonstrated excusable neglect, the district court denied the motion to set aside the judgment because the court concluded that the Yacks had failed to present any meritorious defense to Ponderosa's claim.

■ We agree with the district court. It is unnecessary for us to address the merits of the Yacks' contention that their failure to file any legal brief, affidavit or other evidence in opposition to the summary judgment motion was a result of excusable neglect, for they have made no showing of a viable defense which, if timely presented, could have prevented summary judgment.

It is incumbent upon a party seeking relief from a judgment not only to meet the requirements by I.R.C.P. 60(b), but also to show, plead or present evidence of facts which, if established, would constitute a meritorious defense to the action. This policy recognizes that it would be an idle exercise and a waste of judicial resources for a court to set aside a judgment if, in fact, there is no genuine justiciable controversy. *Reeves v. Wisenor,* 102 Idaho 271, 272, 629 P.2d 667, 668 (1981); *Hearst Corp. v. Keller,* 100 Idaho 10, 12, 592 P.2d 66, 68 (1979). While this requirement that a Rule 60(b) movant must show a meritorious defense has generally been applied in Idaho appellate decisions where the challenged judgment was taken by default, *e.g. Reeves,* it is equally applicable in the present circumstance where the judgment was rendered on the merits. It would

address the Yacks' contention that the time re-

strictions of Rule 56(a) were violated as well.

be pointless to vacate a summary judgment and reopen the proceeding if the party seeking relief has not shown that it can raise genuine factual issues sufficient to defeat the summary judgment motion.

The Yacks contend that they raised two defenses through Linda Yack's affidavit in support of the Rule 60(b) motion and through their answer to the amended complaint. First, they argue that the district court lacked personal jurisdiction to hear the claims against the Yacks and second, that the Yacks' guaranties did not cover the particular debts for which Ponderosa sought recovery.

### A. Personal Jurisdiction

■ We consider first the Yacks' challenge to personal jurisdiction. In Section II of this opinion we held that Ponderosa's complaint alleged jurisdiction sufficiently to withstand a motion to dismiss on the pleadings. That does not end our jurisdictional inquiry, however, for, if personal jurisdiction is at issue, a plaintiff must not only allege in the complaint facts demonstrating personal jurisdiction, but must also meet the burden of proving a factual basis for personal jurisdiction by a preponderance of the evidence at trial. *Schneider v. Sverdsten Logging Co.,* 104 Idaho 210, 214 n. 2, 657 P.2d 1078, 1082 n. 2 (1983); *Donaldson v. Donaldson,* 111 Idaho 951, 957, 729 P.2d 426, 432 (Ct.App. 1986). The Yacks argue that on their Rule 60(b) motion they raised a jurisdiction issue which could not be resolved without an evidentiary hearing.

Because we are treating the Rule 60(b) motion as essentially a reconsideration of the summary judgment motion, we will liberally view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Yacks—a benefit to which litigants opposing a summary judgment motion are entitled.[6] *Kugler v. Drown,* 119

Idaho 687, 689, 809 P.2d 1166, 1168 (Ct.App. 1991); *Sewell v. Neilsen Monroe, Inc.,* 109 Idaho 192, 194, 706 P.2d 81, 83 (Ct.App.1985). We will also consider the evidence and the Yacks' arguments in light of the standard applicable to summary judgment motions, determining whether there exists a genuine issue of material fact and whether Ponderosa was entitled to judgment as a matter of law. *See* I.R.C.P. 56(c).

Accordingly, we must determine whether the evidence before the court at the time of disposition of the Rule 60(b) motion disclosed a genuine issue of material fact regarding the existence of personal jurisdiction over the Yacks. That evidence included the verified complaint.[7] It also included the 1988 guaranties, each of which contained a consent to jurisdiction in the "Fourth District Court of the State of Idaho" in any action to enforce the guaranty.

Also before the court was an affidavit of Linda Yack in support of the Yacks' motion to set aside the judgment. The Yacks admitted in this affidavit and in their answer that they had executed the 1988 guaranties to induce Ponderosa to extend certain credit to PACI and PIPI. Careful review of Ms. Yack's lengthy affidavit reveals that it does not address in any way the issue of the court's personal jurisdiction. The affidavit does not dispute the assertion in the verified complaint that the Yacks were conducting business in the state of Idaho, including soliciting the sale of paint and painting supplies to enhance the business purposes and objectives of the Yacks and the corporate defendants; does not otherwise assert a lack of sufficient contacts with the state of Idaho to create jurisdiction; and does not challenge the validity of the consent to jurisdiction contained in the guaranties.

Relying upon *Telephonic, Inc. v. Rosenblum,* 88 N.M. 532, 543 P.2d 825, 830-31 (1975), the Yacks argue on appeal that a

---

6. We apply this standard to our review of the Yacks' Rule 60(b) motion due to the particular circumstances of this case, including the Yacks' assertion that Ponderosa violated Rule 56(c) time restrictions in presenting its summary judgment motion. We do not imply that the same standards should be employed upon consideration of Rule 60(b) motions in other contexts.

7. A verified complaint may be treated as an affidavit and accorded the probative force of an affidavit. *Camp v. Jiminez,* 107 Idaho 878, 881, 693 P.2d 1080, 1083 (Ct.App.1984).

contractual term consenting to personal jurisdiction must be made understandingly, and the language of the contract must clearly and unambiguously express the consent. That proposition may be correct as a general statement of the law, but it is of no aid to the Yacks. Ms. Yack's affidavit does not state that she found ambiguity in or was unable to understand the plain language of each guaranty where the Yacks agreed that, "any action to enforce this Guaranty may be brought in the Fourth District Court of the state of Idaho." We find that contractual term to be clear and unequivocal. Admittedly, it does not use the term "personal jurisdiction." However, we think that to lay people, unversed in legal terminology, this clause even more clearly conveys that they may be haled into court in the state of Idaho than would a term stating that the guarantors "consent to personal jurisdiction" of the courts of this state.

This provision is readily distinguishable from that relied upon by the plaintiff to establish personal jurisdiction in *Telephonic,* where the contractual provision on jurisdiction stated only that, "the undersigned acknowledges that ... the undersigned is transacting business within the state of New Mexico and that this Agreement and Authorization was negotiated and accepted in and shall be governed by the laws of the state of New Mexico." *Telephonic,* 543 P.2d at 830. To one untrained in the law, that clause would hardly convey an understanding that the signator would be subject to suit in New Mexico courts. By contrast, the Yacks' guaranties clearly expressed that the Yacks could be sued in Idaho if Ponderosa were required to pursue legal action for payment of the guarantied obligations. The Yacks offer no other interpretation, nor can we perceive any. Consequently there was no genuine issue of material fact regarding the validity of the Yacks' consent to personal jurisdiction. The Yacks' bare assertion that the court lacked jurisdiction did not constitute a meritorious defense warranting Rule 60(b) relief.

### B. *Scope of the Guaranties*

The Yacks' only other defense asserted on this appeal is that their guaranties did not apply to the remaining debts owed to Ponderosa by PACI and PIPI. Linda Yack's affidavit states that it was "the parties' understanding" that the personal guaranties would apply only to the balances owed on PACI's and PIPI's promissory notes, and did not cover those corporations' indebtedness incurred through charges on their separate open accounts. Her affidavit further averred that only a balance of $1,568.24 remained unpaid on the promissory notes and that all of the remaining sums claimed by Ponderosa were for charges on the unguarantied open accounts.

The rights of a creditor against a guarantor are determined strictly from the terms of the guaranty agreement. If the guaranty is clear and unequivocal, there is no occasion for the court to consider extrinsic evidence of the parties' intent. Rather, the intent of the parties must be derived from the language of the guaranty if it is unambiguous. *Valley Bank v. Larson,* 104 Idaho 772, 775, 663 P.2d 653, 656 (1983); *McGill v. Idaho Bank & Trust,* 102 Idaho 494, 498, 632 P.2d 683, 687 (1981); *CIT Financial Services v. Herb's Indoor RV Center, Inc.,* 118 Idaho 185, 187, 795 P.2d 890, 892 (Ct.App.1990); *Johnson Equipment v. Nielson,* 108 Idaho 867, 871, 702 P.2d 905, 909 (Ct.App.1985). When the guaranty is unconditional, the guarantor may not imply limitations upon the creditor's right to recover. *CIT Financial Services, supra.*

The guaranty contracts signed by the Yacks are addressed to Ponderosa and plainly and unequivocally state that the Yacks guarantee the payment of "all debts and liabilities owing to you, or which hereafter become owing," by PACI and PIPI respectively. This language leaves no room for the interpretation offered by the Yacks that the guaranties were limited in their application to only the debts evidenced by promissory notes. Thus, the Yacks' contention that the guaranties were inapplicable to the debts for which Ponderosa sought recovery did not raise a genuine factual issue or present a meritorious defense to Ponderosa's claim.

Because both defenses proffered by the Yacks were without merit as a matter of law,

the motion to vacate the judgment pursuant to Rule 60(b) was properly denied.

### VI. Attorney Fees

Ponderosa has requested an award of attorney fees on appeal pursuant to I.A.R. 41 and asserts that the appeal was frivolous. While the Yacks did not prevail on this appeal, they did raise an issue of first impression regarding the denial of their motion for change of venue and did point out a violation of procedural rules by Ponderosa in connection with Ponderosa's motion for summary judgment. Although we find it to be a close question, we conclude that the appeal was not frivolous in its entirety. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979); *Wing v. Amalgamated Sugar Company*, 106 Idaho 905, 911, 684 P.2d 307, 313 (Ct.App.1984). Accordingly, we decline to award attorney fees on appeal to Ponderosa.

The judgment of the district court is affirmed. Costs to Ponderosa Paint Manufacturing, Inc.

WALTERS, C.J., and PERRY, J., concur.