155 P.3d 1189

## McCLURE ENGINEERING, INC., Plaintiff–Respondent

v.

## CHANNEL 5 KIDA; Denny Workman; Marcia T. Turner, LLC; and John Does 1 Though 10, Defendants–Appellants.

### No. 32572.

Court of Appeals of Idaho.

Dec. 14, 2006.

Review Denied April 12, 2007.

Clark Law Office, Eagle, for appellants. Eric R. Clark argued.

Stephan, Kvanvig, Greenwood, Stone & Trainor, Twin Falls, for respondent. Kevin F. Trainor argued.

LANSING, Judge.

The district court entered a default judgment against the defendants after their counsel was allowed to withdraw and defendants

failed to make a new appearance through counsel or pro se. The defendants filed a motion to set aside the default judgment on the ground that they had received no actual notice of their attorney's withdrawal. The district court denied the motion for relief from the judgment. We affirm.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

Defendant Marcia T. Turner, LLC, purchased a building in Twin Falls with the intent to locate a television station there. The building required several modifications, including a tower for a satellite dish. Turner, apparently acting through an agent, Denny Workman, hired McClure Engineering ("McClure") for this project. After the work was completed, the defendants declined to pay the full amount billed by McClure for its services. McClure consequently filed a mechanic's lien and, in September 2004, filed this action to foreclose the lien.

The defendants retained attorney Jeffery Rolig to represent them in this and other lawsuits, which he did for several months. When retained by the defendants, Rolig was given a street address in Las Vegas, Nevada for correspondence with them. During the course of the representation, he learned from a third party that Turner also had an address in Long Key, Florida. In the winter of 2005, he attempted to correspond with the defendants about settlement offers that he had received in this and other litigation. He sent letters by certified mail to both the Las Vegas address and the Florida address, but both were returned as "unclaimed." On February 11, 2005, Rolig filed a motion to withdraw, citing as grounds his inability to collect his fees and his difficulty communicating with his clients. He sent copies of his motion to withdraw by certified mail to the defendants at the street addresses in Las Vegas and Florida. The district court granted the motion on February 16, 2005. Rolig then sent copies of the order for his withdrawal by certified mail to the Las Vegas and Florida addresses as well as the street address of the building owned by Turner in

Twin Falls. Ultimately, all of these mailings were returned to Rolig. The envelopes containing his motion to withdraw and the order for withdrawal bearing the Las Vegas and Florida addresses were returned with Postal Service notations that they were "unclaimed." The envelope sent to the Twin Falls address came back with a notation that the addressee had moved and left no forwarding address.

After Rolig's withdrawal, the defendants did not make a further appearance through new counsel or pro se. Consequently, in April 2005, McClure obtained a default judgment pursuant to Idaho Rule of Civil Procedure 11(b)(3), which allows the entry of a default against a party who does not make a written appearance within twenty days after being notified of the withdrawal of the party's attorney. Notice of the default judgment was sent on April 5, 2005 by the clerk of the court via regular mail to the street addresses in Las Vegas and Florida.

The defendants moved to set aside the default judgment on September 15, 2005, on the ground that the judgment was void because they had not received proper notice of Rolig's withdrawal. The motion was supported by affidavits of Marcia Turner and Workman. Turner's affidavit said that her residence was located at the Long Key, Florida street address used by Rolig, but that in the Florida Keys mail is delivered to a post office box, not to residences, and therefore her mail was not delivered to the street address. The affidavit also stated that Turner did not receive notice in her post office box that there was certified mail from Rolig. Turner's affidavit also said that her telephone number was listed in the Florida Keys telephone directory. Two affidavits from Workman were filed. They attested that Workman had maintained the same telephone number and e-mail address for a year and that attorney Rolig was aware of those means of contacting Workman. Copies of cellular telephone bills were attached to show that Workman had telephone conversations with Rolig in January 2005, during which, according to Workman, Rolig did not mention that he intended to withdraw. The affidavit said that Rolig was aware that Work-

man traveled constantly and, therefore, that the U.S. mail was "the least likely means" to reach Workman. However, neither the Turner affidavit nor the Workman affidavits denied that the Las Vegas street address was a correct business address for Marcia T. Turner, LLC, and for Workman. Turner and Workman stated that they were not aware that Rolig had withdrawn until May 2005, when Workman contacted Rolig by telephone to check the status of the case, and that they did not learn of the default judgment until June 28, 2005.

Attorney Rolig's affidavit was filed by McClure in opposition to the defendants' motion to set aside the default judgment. That affidavit reported the return of the certified mailings that he had sent to the Florida, Las Vegas, and Twin Falls addresses and said that by early January, the Twin Falls telephone number that he had been given for contacting Workman had been disconnected. The affidavit said that Rolig then "no longer had a workable phone number that I could call." Rolig's affidavit also stated that, in an effort to find another address, he searched the Secretary of State's website for an LLC filing by Turner but found none.

The district court denied the motion for relief from the default judgment, and the defendants now appeal from that order.

## II.

## DISCUSSION

### A. Notice of the Order Granting Leave to Withdraw

▮ The defendants contend that the default judgment should be set aside because their attorney withdrew without complying with the notice requirements of I.R.C.P. 11(b)(3). That rule provides, in pertinent part:

> After the order [granting leave to withdraw] is entered, the withdrawing attorney shall forthwith, with due diligence, serve copies of the same upon the client and all other parties to the action and shall file proof of service with the court. The withdrawing attorney may make such service upon the client by personal service or by

certified mail to the last known address most likely to give notice to the client, which service shall be complete upon mailing. Upon the entry of an order granting leave to an attorney to withdraw from an action, no further proceedings can be had in that action which will affect the rights of the party of the withdrawing attorney for a period of 20 days after service or mailing of the order of withdrawal to the party. If such party fails to file and serve an additional written appearance in the action either in person or through a newly appointed attorney within such 20 day period, such failure shall be sufficient ground for entry of default and default judgment against such party ... without further notice. . . .

The defendants correctly point out that if the notice requirements of I.R.C.P. 11(b)(3) are not strictly followed, the judgment is void and must be set aside as a matter of law, rather than as a matter of discretion. *Wright v. Wright*, 130 Idaho 918, 921–22, 950 P.2d 1257, 1260–61 (1998). The party against whom the default judgment was entered may then seek relief under I.R.C.P. 60(b)(4), which provides that "the court may relieve a party or his legal representative [if] ... the judgment is void." *See Dragotoiu v. Dragotoiu*, 133 Idaho 644, 647, 991 P.2d 369, 372 (Ct.App.1998) (Relief from a void judgment pursuant to Rule 60(b)(4) is nondiscretionary and is subject to free review on appeal.). Whether the strictures of Rule 11(b)(3) were satisfied is a question of law, *Reinwald v. Eveland*, 119 Idaho 111, 112, 803 P.2d 1017, 1018 (Ct.App.1991), and we therefore exercise de novo review. *Fisher Systems Leasing, Inc. v. J & J Gunsmithing & Weaponry Design, Inc.*, 135 Idaho 624, 627, 21 P.3d 946, 949 (Ct.App.2001).

The defendants contend that the default judgment is void because in withdrawing as their counsel, Rolig did not comply with the Rule 11(b)(3) requirement that a copy of the withdrawal order be sent to the address "most likely to give notice to the client." They argue that the present case is indistinguishable from *Wright*, where the Idaho Supreme Court affirmed an order setting aside a default judgment entered after withdrawal of the defendants' counsel. In that case, the

defendants' attorney obtained leave from the trial court to withdraw and sent a copy of the withdrawal order to an address that many years earlier had been the defendants' place of business, but was no longer. When the defendants did not make a new appearance, a default judgment was entered. Years later, an assignee of the plaintiff attempted to collect the judgment, and the defendants moved to set it aside, asserting that they had not received proper notification of their counsel's withdrawal or of the subsequent judgment. Although there was disagreement about what the correct address would have been, the district court set aside the judgment, finding that the evidence was "extremely strong" that the address to which the notice was sent "was not the [defendants'] residence, was not an address most likely to give the defendants notice, and was not an address that was even slightly likely to give the defendants notice," when the mailings were made. *Wright,* 130 Idaho at 922, 950 P.2d at 1261. On appeal, the Supreme Court affirmed, holding that this finding was supported by the evidence.

Contrary to the defendants' argument that the ruling in *Wright* mandates a reversal here, the two cases are readily distinguishable, for here the district court specifically found that the Las Vegas address used by Rolig *was* the address most likely to give Turner and Workman notice, and there is substantial and competent evidence in the record to support this finding. It is undisputed that attorney Rolig had been instructed to correspond with his clients via the Las Vegas address and had never been informed by them that there was a Florida post office box address or any other appropriate address. There is no evidence that the Las Vegas address was no longer a valid business address for Workman or for Marcia T. Turner, LLC. The notations placed by the Postal Service on the returned envelopes do not indicate that the addressee had moved or that the addresses were invalid, but rather that the letters were "unclaimed" after three notices of each had been left at the Las Vegas address by the Postal Service. The defendants' evidence on their motion to set

aside the default judgment gives no explanation for why letters sent to the Las Vegas address were not claimed, apart from the implication that Workman did not pick up the mail because he "travels constantly."

Nevertheless, Turner and Workman contend that when the Postal Service returned the documents as unclaimed, Rolig could have discovered the Florida post office box address with investigation, and because he failed to do so, he did not act with the "due diligence" required by the rule. We note, however, that Rolig did take several investigative steps. Although his clients had not told him about any Florida address, he learned of the Florida street address from another law office, and thereafter sent documents to both that address and the Las Vegas address that he had been instructed to use. He also checked the Idaho Secretary of State website looking for further information on Marcia T. Turner, LLC, but found no information because the company had not registered in this state. Moreover, the information that was then available to Rolig did not suggest that the Las Vegas address was no longer valid, but rather that the defendants were declining to accept mail from him, perhaps because of his earlier attempts to obtain payment of his fees.

■ Finally, the defendants argue that Rolig could have contacted Workman by using Workman's cellular telephone number or his e-mail address. Rolig's and Workman's affidavits are in conflict as to whether Rolig possessed a working telephone number for Workman, but that factual dispute is not material to our decision, for Rule 11(b)(3) does not require notice by telephone or e-mail, but only by personal service or certified mail to "the last known address most likely to give notice." Unlike the attorney in *Wright,* who acknowledged that he had made a clerical error and sent the order for his withdrawal to an address that he knew to be no longer valid,[1] there is no indication that the Las Vegas address was actually invalid or that Rolig had reason to believe that it

---

1. This information is not contained in the text of the *Wright* opinion. It is, however, contained in the appellate record of that case.

was. The issue before us is not whether Rolig could have done more to provide notice, nor whether he discharged his duty to his clients under the Idaho State Bar's Rules of Professional Conduct; the issue is whether he complied with Rule 11(b)(3). Although some might consider that rule to be obsolete in view of current communications technology, it is nevertheless the controlling law.

The evidence shows that Rolig sent his motion to withdraw and the withdrawal order by certified mail to the correct business address for the defendants and, for still unknown reasons, that mail was never claimed. The district court correctly found that the documents were sent to the last known address most likely to give notice to the client, and that there was no violation of Rule 11(b)(3).

## B. Notice of Hearing on Motion to Withdraw

■ In addition to arguing that Rolig did not give proper notice of the order granting his motion to withdraw, the defendants contend that he did not send timely notice of the hearing on that motion. Before an attorney may withdraw, I.R.C.P. 11(b)(2) requires that a hearing on the motion be held "after notice to all parties to the action, including the client of the withdrawing attorney." Such notice, the defendants argue, must be served in compliance with I.R.C.P. 7(b)(3)(A), which requires that the notice of hearing on a written motion be served so as to be received by the parties no more than fourteen days before the hearing. Here, Rolig mailed copies of the notice of hearing to the defendants at the Las Vegas and Florida addresses on February 9, 2005, and the hearing was held five days later, so it is apparent that the notice of hearing was not timely served.

■ This defect does not, however, invalidate the withdrawal order or the subsequent default judgment. Rule 61, I.R.C.P., instructs that the court, at every stage of a proceeding, "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Accordingly, untimely notice of a hearing requires no relief on appeal unless the aggrieved parties show that the untimeliness of

the notice prejudiced them in some way. Thus, in *Ponderosa Paint Mfg., Inc. v. Yack,* 125 Idaho 310, 317, 870 P.2d 663, 670 (Ct. App.1994), we declined to reverse a summary judgment merely because the summary judgment motion and supporting documents were not mailed to the opposing party at least thirty-one days in advance of the hearing as required by I.R.C.P. 56(c) and 6(e)(1). We held that the technical error did not require reversal because the appellants had not demonstrated that, if given additional time, they could have submitted evidence or legal argument that would have prevented the summary judgment against them. *Id.* Similarly, in *In re Estate of Keeven,* 126 Idaho 290, 882 P.2d 457 (Ct.App.1994), we held that untimely service of a motion for consolidation did not warrant reversal of the consolidation order because the appellant identified no prejudice stemming from the late service of the motion and made no argument that the consolidation order was erroneous on the merits. This situation, we held, fell within the rule that an appellate court will not grant relief for harmless error. *Id.* at 296, 882 P.2d at 463.

Here, the crux of the defendants' argument is not that they were prejudiced by the untimely service of the notice of hearing but that they did not receive notice at all, which apparently was due to Workman's failure to pick up certified mail sent to the Las Vegas address. The defendants have not shown that if the notice of hearing had been mailed earlier, or the hearing held later, the notice would have been received. The untimeliness of service of the notice of hearing on Rolig's motion to withdraw was not a cause of the claimed prejudice; it was harmless error.

## C. Attorney Fees

■ McClure requests attorney fees on appeal but makes no argument and cites no legal authority for the award. Idaho appellate courts have repeatedly held that we will not consider requests for attorney fees on appeal that are not supported by legal authority or argument. *VFP VC v. Dakota Co.,* 141 Idaho 326, 337–38, 109 P.3d 714, 725–26 (2005); *Meisner v. Potlatch Corp.,* 131 Idaho 258, 263, 954 P.2d 676, 681 (1998); *Buchin v.*

*Lance,* 128 Idaho 266, 273, 912 P.2d 634, 641 (1995). Accordingly, no attorney fees are awarded.

### III.

### CONCLUSION

The district court correctly determined that Rolig complied with I.R.C.P. 11(b)(3) by mailing notice of his motion to withdraw and the withdrawal order to the address given to Rolig by the defendants for business correspondence. Although the notice of the hearing on the motion to withdraw was not timely served, this error was not prejudicial. Accordingly, the defendants have not shown that the default judgment entered after the withdrawal of their attorney was invalid, and we affirm the district court's order denying the motion to vacate the default judgment. Costs, but not attorney fees, are awarded to respondent.

Chief Judge PERRY and Judge GUTIERREZ concur.