# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 39254

| | |
|---|---|
| SAUNDRA McDAVID, )<br>)<br>Plaintiff-Respondent, )<br>)<br>v. )<br>)<br>MURAT KIROGLU, an individual; MEGA )<br>GROUP INTERNATIONAL, LLC, a Florida )<br>limited liability company; IZOPOLI )<br>GROUP, LLC, a Florida limited liability )<br>company; FLORIDA FLOORS AND )<br>DÉCOR, INC., a Florida corporation, )<br>)<br>Defendants-Appellants, )<br>)<br>and )<br>)<br>FATMA KIROGLU, an individual; SEVEN )<br>HILLS STONE AND MOSIACS, INC., a )<br>Texas corporation; ERHAN OGAN, an )<br>individual; EMERSON FITZGERALD, )<br>LLC, a Texas limited liability company; and )<br>BARBARA FITZGERALD, an individual )<br>)<br>Defendants. )<br>) | 2013 Opinion No. 45<br><br>Filed: July 25, 2013<br><br>Stephen W. Kenyon, Clerk |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Order denying motion to set aside default judgment, <u>reversed</u> and <u>case remanded</u>.

Angstman Johnson; Matthew T. Christensen, Boise, for appellants.

Lerma Law Office, P.A.; Kenley E. Grover, Boise, for respondent.

---

LANSING, Judge

Mega Group International, LLC ("MGI"); Izopoli Group, LLC ("Izopoli"); Florida Floors and Décor, Inc. ("Florida Floors"); and Murat Kiroglu, who is the owner, manager, and director

1

of MGI, Izopoli, and Florida Floors (hereinafter referred to collectively as "Appellants") appeal from the denial of their motion to set aside default judgment.

# I.

# BACKGROUND

On January 25, 2010, Saundra McDavid filed a complaint against Appellants and five other defendants. McDavid alleged numerous claims including breach of warranty, breach of contract, unjust enrichment, and fraud arising from her purchase of travertine pavers and coping. She alleged that the shipment of pavers and coping that Appellants sent her was incomplete, defective, and mismatched. Attorney Brian Knox entered an appearance for Appellants and filed pleadings on their behalf,[1] but on December 13, he filed a motion for leave to withdraw as their counsel. The district court entered an order granting the motion on February 17, 2011. Knox filed a certificate of service indicating that he mailed a copy of the withdrawal order to Appellants on March 1. On March 30, McDavid filed a motion for a default judgment against Appellants based on their failure to appear or to appoint new counsel within twenty days following the service of the withdrawal order. The district court granted the motion, and default judgment was entered on April 11.

On July 28, 2011, Appellants filed a motion to set aside the default judgment pursuant to Idaho Rules of Civil Procedure 55(c) and 60(b) on the ground that the judgment was void because the order allowing Knox's withdrawal was not properly served on them and, alternatively, on the ground of excusable neglect. According to a supporting affidavit, Murat Kiroglu, who was the "owner, manager and director" of the other Appellants, was out of the country until mid-March 2011 and did not learn of Knox's withdrawal until his return to the United States. The district court denied the motion for relief from the default judgment, and this appeal followed.

---

[1] Knox filed an answer on behalf of MGI, and a motion to dismiss on behalf of Murat Kiroglu, Izopoli, Florida Floors, and Fatma Kiroglu, one of the other named defendants. The district court orally granted the motion to dismiss with respect to Fatma Kiroglu and denied the motion with respect to the other parties.

## II.

## ANALYSIS

The decision to grant or deny a motion to set aside a default judgment for excusable neglect under Rule 60(b)(1) is reviewed for abuse of discretion. *Berg v. Kendall*, 147 Idaho 571, 576, 212 P.3d 1001, 1006 (2009); *Knight Ins., Inc. v. Knight*, 109 Idaho 56, 59, 704 P.2d 960, 963 (Ct. App. 1985). Where a default or default judgment is challenged as void under Rule 60(b)(4), we conduct de novo review. *McClure Eng'g, Inc. v. Channel 5 KIDA*, 143 Idaho 950, 953, 155 P.3d 1189, 1192 (Ct. App. 2006); *Reinwald v. Eveland*, 119 Idaho 111, 112, 803 P.2d 1017, 1018 (Ct. App. 1991).

Here, McDavid sought and obtained a default judgment pursuant to I.R.C.P. 11(b)(3) on the basis that the Appellants had neither appeared personally nor obtained a new attorney to make an appearance on their behalf within twenty days after entry of the order allowing Knox to withdraw as their counsel. Rule 11(b)(3) permits the entry of default and default judgment against a party, or the dismissal of the action of such party with prejudice and without further notice, if the party does not appear or appoint a new attorney within twenty days after service of an order for withdrawal of counsel. The rule further specifies that the order for withdrawal must give notice to the client of this consequence of failure to timely appear again, personally or through counsel, and directs the method by which the order must be served upon the client of the withdrawing attorney as follows:

> After the order is entered, the withdrawing attorney shall forthwith, with due diligence, serve copies of the same upon the client and all other parties to the action and shall file proof of service with the court. The withdrawing attorney may make such service upon the client by personal service or by certified mail to the last known address most likely to give notice to the client, which service shall be complete upon mailing.

In this case, it is undisputed that Knox did not serve the withdrawal order on the Appellants by personal service or certified mail as specified in Rule 11(b)(3) but, instead, sent it to them by regular mail.

The Idaho Supreme Court has held that a valid default judgment may not be procured pursuant to this rule unless there has been strict compliance with its terms concerning notice to the party whose attorney has withdrawn. *Berg*, 147 Idaho at 577-78, 212 P.3d at 1007-08; *Wright v. Wright*, 130 Idaho 918, 921, 950 P.2d 1257, 1260 (1998). *See also Fisher Sys.*

3

*Leasing, Inc. v. J & J Gunsmithing & Weaponry Design, Inc.*, 135 Idaho 624, 628, 21 P.3d 946, 950 (Ct. App. 2001). Judgments taken against a party whose attorney withdrew without strict compliance with the rule are void and must be set aside as a matter of law. *Wright*, 130 Idaho at 921, 950 P.2d at 1260; *Martinez v. Brown*, 144 Idaho 410, 412, 162 P.3d 789, 791 (Ct. App. 2007); *Fisher*, 135 Idaho at 628, 21 P.3d at 950.

Appellants argue that the default judgment against them was void because of Knox's failure to strictly comply with the service requirements of Rule 11(b)(3). McDavid responds that the case law requiring strict compliance with that rule pertains to the content of the order informing the client of the ramifications of failing to act within twenty days[2] and should not be extended to require strict compliance with the manner of service specified in the rule where an alternative form of service gave the client actual notice of the attorney's withdrawal and of the client's need to take action within twenty days in order to avoid an adverse judgment.

In the district court's ruling from the bench on the Appellants' motion to set aside the default judgment, it appears that the court disposed of this issue by holding that the permissive word "may" in the rule means that it is permissible to serve the withdrawal order by methods other than personal service or certified mail. We conclude that this is a misreading of the rule. After directing that the withdrawing attorney "shall forthwith, with due diligence, serve copies" of the withdrawal order upon the client, the rule continues by stating, "The withdrawing attorney may make such service upon the client by personal service or by certified mail . . . ." We view that sentence as providing the withdrawing attorney with only two alternative means to accomplish service. The purpose of that provision is to require service by means most likely to bring the withdrawal order to the attention of the client. If other means of service were permitted, there would have been no reason to include that sentence in Rule 11(b)(3) at all. Therefore, we conclude that attorney Knox did not comply with the rule when he served the order on his former client by regular mail. Thus, we must determine whether the "strict compliance standard" established by case law applies to the manner of service mandated by Rule 11(b)(3).

There are two prior cases in which this Court addressed arguments that a default judgment was void because an attorney did not strictly comply with the service requirements of

---

[2] Appellants do not assert that the contents of the order were defective.

Rule 11(b)(3). In *Fisher*, the defendant's attorney was permitted to withdraw, but the attorney did not serve the defendant with a copy of the withdrawal order by *any* means and did not file proof of service with the court. The order itself was also noncompliant with the rule in that it did not notify the client that default judgment could be taken without further notice and that the client's claims could be dismissed "with prejudice." Although the withdrawal order was not served by the withdrawing attorney, a copy of the order was sent to the defendant by regular mail by the clerk of the court. Default judgment was entered, and the trial court denied the defendant's subsequent motion to set aside the judgment. On appeal, we suggested that strict compliance with the service requirement of the rule is necessary when we stated:

> Fisher Systems readily *admits* that Rule 11(b)(3) was not strictly complied with because the withdrawal order was not sent by certified mail or personally served on Davis--it was sent by regular mail by the clerk of the court. Fisher Systems further admits that the withdrawing attorney did not file proof of service with the court, as is required. In addition, the withdrawal order itself was deficient on its face . . . .
>      Accordingly, we hold that the defaults and default judgments . . . were invalid for failure to strictly satisfy the plain requirements of I.R.C.P. 11(b)(3).

*Fisher*, 135 Idaho at 628, 21 P.3d at 950 (footnote omitted). Thus, in *Fisher* we found the default judgment invalid due to failure to strictly comply with Rule 11(b)(3), but the lack of compliance was not, as here, solely a failure to properly serve the order, for the content of the order was also deficient.

We again addressed the service requirements of Rule 11(b)(3) in *McClure*. There, the defendants acknowledged that their withdrawing attorney mailed copies of the order by certified mail to the address they had given to the attorney, but asserted that it was not the address most likely to give them notice and that they had not received actual notice of the mailing. The defendants argued that the default judgment entered against them was consequently void and that the district court erred in denying their motion to set it aside. On appeal, we reiterated the rule that "if the notice requirements of I.R.C.P. 11(b)(3) are not strictly followed, the judgment is void and must be set aside as a matter of law, rather than as a matter of discretion." *McClure*, 143 Idaho at 953, 155 P.3d at 1192. However, we affirmed the district court's decision not to set aside default judgment after concluding that the evidence supported the district court's determination that the mailings were sent to the address most likely to provide notice. We specifically rejected the defendants' argument that their attorney was required to make further

5

contact by telephone or email to procure *actual* notice after his certified mailing was returned unclaimed. We stated:

> The issue before us is not whether [the attorney] could have done more to provide notice, nor whether he discharged his duty to his clients under the Idaho State Bar's Rules of Professional Conduct; the issue is whether he complied with Rule 11(b)(3). Although some might consider that rule to be obsolete in view of current communications technology, it is nevertheless the controlling law.

*McClure*, 143 Idaho at 955, 155 P.3d at 1194.

Recently the Idaho Supreme Court considered an analogous issue with respect to service of *process* in *Elliott v. Verska*, 152 Idaho 280, 271 P.3d 678 (2012). There, the plaintiff argued that noncompliance with the mandated method for service of a summons and complaint set forth in I.R.C.P. 4 could be excused if some other manner of service resulted in satisfaction of constitutional due process requirements, or in other words, when actual notice has occurred. The Supreme Court rejected the argument and stated:

> We have not held that noncompliance with Rules (4)(d)(2) and 4(d)(4) are excused as long as the requirements of due process are met.
> . . . .
> We did not hold [in *Herrera v. Estay*, 146 Idaho 674, 201 P.3d 647 (2009)] that the manner of serving process required by Rule 4 can be ignored as long as the defendant in some way receives such notice of the pending lawsuit as would satisfy the requirements of due process. In fact, we held in *Campbell* [*v. Reagan*, 144 Idaho 254, 257, 159 P.3d 891, 894 (2007)] that receiving a copy of the summons and complaint in the mail, which would obviously meet the requirements of due process, did not constitute service of the summons and complaint. We stated: "[T]he sole consequence of [the defendant's] receipt of [the plaintiff's] letter was to put him on notice that a claim had been filed against him. . . . *Telford* [*v. Mart Produce, Inc.*, 130 Idaho 932, 935, 950 P.2d 1271, 1274 (1998)] stands for the proposition that such notice will not excuse a plaintiff's failure to timely serve process." *Id.* at 257, 159 P.3d at 894.

*Elliott*, 152 Idaho at 286-87, 271 P.3d at 684-85. Collectively, *Fisher*, *McClure*, and *Elliott* suggest that substantial compliance with the manner of service mandated by Rule 11(b)(3) is not sufficient, even when actual notice has been accomplished.

The policy underlying the requirement of strict compliance with Rule 11(b)(3) supports the same conclusion. In *Knight*, we explained that policy:

> Rule 11(b)(3) provides a readily identifiable, straightforward requirement for counsel and the courts to satisfy. Compliance with the rule obviates any need for judges to weigh conflicting evidence of actual notice or to speculate concerning a

6

litigant's state of mind. An entitlement to relief produces consistent, predictable results, unaffected by the varying philosophies that underlie exercises of discretion by individual judges.

*Knight*, 109 Idaho at 60, 704 P.2d at 964. This policy applies with equal force whether there was a defect in the language of the notice or a defect in the manner of service on the withdrawing attorney's client. In either circumstance, absent a requirement of strict compliance, the rule will not provide a readily identifiable, straightforward standard to guide counsel and the trial courts; in some circumstances, courts would be required to determine whether actual notice occurred based on conflicting evidence, or to determine what types of service other than certified mail or personal service would substantially comply with the rule. We note that in this case, it is not clear whether Appellants received actual notice of the withdrawal order before McDavid filed a motion for default judgment.[3]

Having considered the foregoing authorities and the policies that call for strict compliance with Rule 11(b)(3), we hold that an attorney must strictly comply with the form of service mandated by Rule 11(b)(3). A subsequent default judgment entered against the party whose attorney withdrew will not be valid if the withdrawal order was not served in strict compliance.[4] Here, it is undisputed that notice was not sent by certified mail or personally served on Appellants as required by Rule 11(b)(3). Consequently, the default judgment secured by McDavid is void and must be vacated.[5]

---

[3] In an affidavit dated July 28, 2011, Murat Kiroglu stated that he was out of the country until March 15, and that he learned of Knox's withdrawal at some point thereafter through his "local Florida counsel, who had received an email copy of the order of withdrawal from Mr. Knox." An affidavit of McDavid's attorney said that he was contacted by Murat Kiroglu on April 1 and that Kiroglu then indicated that he had received the withdrawal order. On appeal, Appellants assert that actual notice did not occur until "mid- to late-March 2012." The motion for default judgment was filed on March 30.

[4] As we stated in *Fisher*, 135 Idaho at 628 n.3, 21 P.3d at 950 n.3, "[I]n these situations opposing counsel may petition the trial court to force a withdrawing attorney to strictly comply with I.R.C.P. 11(b)(3) in order to avoid future attacks on the validity of a subsequently secured default judgment."

[5] Because the default judgment was void, we do not address Appellants' alternative arguments that it should be set aside under Rule 60(b)(1) for excusable neglect.

Appellants request an award of attorney fees on appeal on the ground that McDavid's defense against their motion to set aside the default judgment, and her defense of this appeal, is frivolous. Idaho Code § 12-121 and Idaho Appellate Rule 41(a) authorize such an award if the Court "is left with an abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation." *Karlson v. Harris*, 140 Idaho 561, 571, 97 P.3d 428, 438 (2004). We do not find that standard satisfied here. McDavid's resistance to this appeal was not unreasonable, as the Idaho appellate courts had not previously addressed whether service that accomplished actual notice, though not in strict compliance with Rule 11(b)(3), will suffice when the content of the order for withdrawal of the attorney is not otherwise challenged. Therefore, Appellants' request for attorney fees on appeal is denied. McDavid's request for attorney fees is likewise denied as she is not the prevailing party.

The district court's order denying Appellants' motion to set aside the default judgment is reversed. Costs to Appellants.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**