**CUMBERLAND BANK**

v.

**G & S IMPLEMENT CO., INC. et al.**

Court of Appeals of Tennessee,
at Nashville.

Jan. 11, 2006 Session.

Aug. 4, 2006.

Robert E. Boston and Jennifer L. Weaver, Nashville, Tennessee, for the appellant, William G. Dickerson, II.

Steven F. Glaser and Thomas Boyers V, Gallatin, Tennessee, for the appellee, Cumberland Bank.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, and FRANK G. CLEMENT, JR., JJ., joined.

This appeal involves a dispute between a bank and the co-maker of a note. The bank asserted that the note was in default and filed suit in the Circuit Court for Sumner County against the co-maker of the note and others. The co-maker asserted that he was not liable on the note either as a maker or a guarantor and asserted affirmative defenses based on res judicata, discharge by payment in full, and the contractual limits on his guaranty. Following a bench trial, the trial court held in favor of the bank and ordered the co-maker to pay the bank $162,246.37 plus $17,500.00 in attorney's fees. The co-maker appealed. We have determined that the co-maker is not liable to the bank as either maker or guarantor because the bank's acceptance of a new note from the other maker of the note discharged the co-maker's obligations under the note.

## I.

In March 1996, William G. Dickerson, II purchased fifty percent of G & S Implement Co., Inc. (G & S Implement) from Eddie Kingrey. Two months later, in May 1996, Cumberland Bank agreed to renew G & S Implement's $267,936.28 note that had been executed in April 1995. Accordingly, on May 7, 1996, Messrs. Kingrey and Dickerson executed a new five-year note in the amount of $268,036.28 both as officers of G & S Implement and individually. This note was partially secured by Mr. Kingrey's residence.

Mr. Dickerson also executed a personal guaranty on May 7, 1996. This guaranty contained two significant limitations. First, the maximum amount of the guaranty was $267,936.28. Second, the guaranty contained a revocation provision which, if invoked, prevented Mr. Dickerson from becoming secondarily liable for advances or new indebtedness extended or created after Cumberland Bank's receipt of the notice of revocation.

Mr. Dickerson's direct involvement with G & S Implement did not last long. In December 1996, after his certified public accountant discovered previously undisclosed corporate liabilities, Mr. Dickerson severed his ties with G & S Implement. On December 13, 1996, he notified Cumberland Bank in writing that he revoked the guaranty he had executed on May 7, 1996. In his letter, Mr. Dickerson pointed out that the bank had advanced no new funds to G & S Implement during the period when his guaranty had been in force. He also cautioned the bank that there should be "no future reliance for any

purposes on my personal credit." Cumberland Bank received Mr. Dickerson's letter and placed it in Mr. Kingrey's loan file.

Cumberland Bank was apparently unperturbed by Mr. Dickerson's concern about the financial soundness of G & S Implement or the revocation of his personal guaranty. It continued to advance funds to G & S Implement, even after July 3, 1997, when Mr. Kingrey and his wife filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee.

On October 7, 1997, Mr. Dickerson filed an adversary proceeding against Mr. Kingrey in the bankruptcy proceeding. He asserted that Mr. Kingrey had fraudulently induced him to purchase an interest in G & S Implement and to guaranty its debts by failing to disclose approximately $175,000 in corporate liabilities. Mr. Dickerson also asserted that Mr. Kingrey had willfully and maliciously defamed him. Mr. Dickerson requested the bankruptcy court to award him damages against Mr. Kingrey and to declare that the judgment was non-dischargeable.[1]

In March 1998, Cumberland Bank and another secured creditor filed a motion in the bankruptcy proceeding to dismiss the Kingreys' Chapter 11 petition because the Kingreys had failed either to file a proposed reorganization plan or to begin negotiations with their creditors. One of the debts involved in this proceeding was the May 1996 G & S Implement note, because Mr. Kingrey had executed it both as an officer of the corporation and as an individ-

ual. Cumberland Bank was a secured creditor because this note was secured by a second lien on the Kingreys' residence.[2]

The bankruptcy court disposed of the motion to dismiss the Kingreys' Chapter 11 petition on July 16, 1988 when it entered an agreed order in which the Kingreys agreed to pay Cumberland Bank $5,000 and the proceeds of the sale of certain real property and livestock within thirty days. The Kingreys also agreed to pay the bank $1,300 per month for the next eighteen months and to obtain refinancing and pay the unpaid balance of any other debt to Cumberland Bank before the expiration of eighteen months.

The Kingreys filed a plan of reorganization in the bankruptcy court on November 3, 1998. Among other matters, this plan addressed the Kingreys' personal debts to Cumberland Bank. Cumberland Bank objected to the plan. Following a confirmation hearing in January 1999, the bankruptcy court filed an order on March 15, 1999, confirming a modified version of the Kingreys' plan. The order noted Cumberland Bank's secured claims regarding the Kingreys' residence, truck, and livestock and approved the earlier agreement that the Kingreys would pay Cumberland Bank $1,300 per month for eighteen months and that by the nineteenth month following the confirmation of their plan, the Kingreys "will have obtained refinancing and pay the unpaid balance, if any, of [the] secured portion of the claim of Cumberland Bank in full."

The Kingreys began making their payments to Cumberland Bank as required by their reorganization plan, and the bank

---

1. The record contains no evidence regarding the bankruptcy court's disposition of this claim. During the trial of this case, the parties and their lawyers stated that it was resolved when Messrs. Kingrey and Dickerson agreed not to seek damages from each other.

2. Cumberland Bank also possessed liens on a truck and some livestock owned by the Kingreys.

credited these payments to the accrued interest. The bank was apparently satisfied with these payments because it made a small principal advance in June 1999. Beginning in July 1999, the bank increased the interest rate on the Kingreys' indebtedness. The increased interest rate resulted in an increase in the Kingreys' monthly payments from $1,300.00 to $1,395.63. The Kingreys continued to make their payments. However, the principal amount of their indebtedness—$167,-281.88—remained essentially the same from November 1999 through November 2000 because their payments were only sufficient to pay the accrued interest.

On November 30, 2000, the Kingreys and Cumberland Bank executed a new $170,835 promissory note. This note listed the Kingreys as the only borrowers, but it was no longer secured by their residence.[3] The bank also included in the note the following statement:

> Renewal of note number 658527830 which was originally executed by G & S Implement Co., Inc., a corporation no longer in existence, Eddie Kingrey was and is the sole shareholder of G & S Implement Co., Inc., Eddie Kingrey is a guarantor on this note.

On December 1, 2000, Cumberland Bank advanced Mr. Kingrey the $3,553.12 difference between the principal amount of the November 2000 note and the remaining indebtedness of the old G & S Implement note.

The Kingreys began making regular, although frequently late, payments on the November 2000 note in December 2000. Notwithstanding the execution of the November 2000 note and the Kingreys' pay-

ments on this note, Cumberland Bank filed suit in the Circuit Court for Sumner County on February 13, 2003 against G & S Implement, Mr. Kingrey, and Mr. Dickerson, alleging that the 1996 G & S Implement note was in default because the corporation and Messrs. Kingrey and Dickerson had failed "to make payments as agreed [in the 1996 note] including the April 2001 payment of $212,977.01." The bank sought a judgment for $167,920.90 as well as fees and costs in the amount of $30,125.76.[4]

The case proceeded against Mr. Dickerson alone as maker and guarantor of the 1996 G & S Implement note because Cumberland Bank could not proceed against Mr. Kingrey by virtue of the bankruptcy proceeding and because G & S Implement was no longer in existence. Following a bench trial in September 2004, the trial court entered an order granting Cumberland Bank a judgment against Mr. Dickerson for $162,246.37, as well as $17,500.00 in attorney's fees. Mr. Dickerson perfected this appeal.

## II.

The standards this court uses to review the results of bench trials are well-settled. With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton,* 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk,* 37 S.W.3d 462, 465

---

3. The bank was apparently trying to accommodate Mr. Kingrey by substituting another piece of real property for the Kingreys' residence as collateral for the loan.

4. The bank did not undertake to explain in its complaint why it was seeking only $167,920.90 when it had alleged that the default stemmed from the failure to make a $212,977.01 balloon payment.

(Tenn.Ct.App.2000). If, however, the trial court has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn.1997).

■ Reviewing findings of fact under Tenn. R.App. P. 13(d) requires an appellate court to weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. There is a "reasonable probability" that a proposition is true when there is more evidence in its favor than there is against it. Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Parks Props. v. Maury County*, 70 S.W.3d 735, 741 (Tenn.Ct.App.2001); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn.Ct. App.1999).

■ Tenn. R.App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn.Ct.App.2000). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Parks Props. v. Maury County*, 70 S.W.3d at 742. Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn.Ct.App.2000).

■ The presumption of correctness in Tenn. R.App. P. 13(d) applies only to find-

ings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn.2001); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn.1998); *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 60 S.W.3d 65, 71 (Tenn.Ct.App.2001); *Placencia v. Placencia*, 48 S.W.3d 732, 734 (Tenn.Ct.App. 2000).

### III.

■ Mr. Dickerson's rights and obligations both as a co-maker and guarantor of the 1996 note are governed by Article 3 of the Uniform Commercial Code [Tenn. Code Ann. §§ 47–3–101 to–605 (2001 & Supp.2005)]. In Tennessee, the Uniform Commercial Code is the exclusive means by which obligations under negotiable instruments may be discharged. *Commerce Union Bank v. Burger–In–A–Pouch, Inc.*, 657 S.W.2d 88, 91–92 (Tenn.1983).

Tenn.Code Ann. § 47–3–601(a) governs the discharge of Mr. Dickerson's obligations as a co-maker of the 1996 note. It provides that "[t]he obligation of a party to pay the instrument is discharged as stated in this chapter or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract." While the events that will discharge a person's liability on a note are "many and varied," 2 James J. White & Robert S. Summers, Uniform Commercial Code § 16–12, at 131 (4th ed.1995) (White & Summers), Part 6 of Article 3 singles out several events for individual treatment, including discharge by payment,[5] tender of payment,[6] and by cancellation or renuncia-

---

**5.** Tenn.Code Ann. § 47–3–602.

**6.** Tenn.Code Ann. § 47–3–603.

tion.[7]

To the extent that Mr. Dickerson can be characterized as an accommodation party,[8] the discharge of his obligation is governed by Tenn.Code Ann. § 47–3–605. This provision affords accommodation parties various suretyship defenses to efforts to enforce their obligations. It defines the circumstances under which an accommodation party will be discharged from its obligation, including the extension of the note's due date,[9] a material modification of the obligation affecting the accommodation party's right of recourse,[10] and the impairment of the collateral.[11] However, Tenn. Code Ann. § 47–3–605(i) permits the parties to waive the suretyship defenses in Tenn.Code Ann. § 47–3–605.

The note and guaranty Mr. Dickerson signed in May 1996 effectively waived all of the suretyship defenses the Uniform Commercial Code affords to Mr. Dickerson. However, Mr. Dickerson is not left defenseless. He may still assert the common-law defenses that would otherwise be available to persons seeking to defend a simple contract claim. Tenn.Code Ann. § 47–3–305(a)(2); *see also* Tenn.Code Ann. § 47–1–103.

## IV.

Mr. Dickerson first takes issue with the trial court's refusal to hold that the doctrine of res judicata barred the bank's claim against him based on the 1996 note. He insists that the bankruptcy court's approval of the Kingreys' plan of reorganization which addressed Mr. Kingrey's obligations under the 1996 note concluded the bank's claims against him based on the same note. We need not tarry long with this sleeveless argument.

▇▇▇▇ There is no question that a bankruptcy court's order of confirmation can be given res judicata effect. However, persons seeking to use an order of confirmation to preclude other claims must demonstrate that all the necessary ingredients for a res judicata defense are present. Two of these ingredients are (1) that the parties in the bankruptcy proceeding were the same or in legal privity with the parties in the later proceeding[12] and (2) that the claim sought to be precluded either was litigated or could have been litigated in the bankruptcy proceeding.[13]

▇▇▇▇ Mr. Dickerson has failed to come forward with either evidence or argument to satisfy these two requirements. Mr. Dickerson and Mr. Kingrey are not

---

7. Tenn.Code Ann. § 47–3–604.

8. An accommodation party has been characterized as "a fool with a pen." WHITE & SUMMERS, § 16–11(i), at 131. However, the Uniform Commercial Code defines an "accommodation party" as a person who signs an instrument to benefit the "accommodated party" and who is not a direct beneficiary of the value obtained. Tenn.Code Ann. § 47–3–419(a) & cmt. 1. We need not engage in the exquisitely fact-intensive task of determining whether Mr. Dickerson is or is not an accommodation party for two reasons. First, he never explicitly claimed that he was an accommodation party. Second, he effectively waived all the defenses that the Uniform Commercial Code provides to accommoda-

tion parties. Thus, characterizing Mr. Dickerson as an accommodation party would not alter his legal obligations in this case.

9. Tenn.Code Ann. § 47–3–605(c).

10. Tenn.Code Ann. § 47–3–605(d).

11. Tenn.Code Ann. § 47–3–605(e), (f).

12. *In re Estate of Boote*, 198 S.W.3d 699, 719 (Tenn.Ct.App.2005); *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn.Ct.App.1990).

13. *See Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn.1995); *Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn.Ct.App. 2003).

the same party and are not in privity because their obligations to the bank, while both derived from the 1996 note, are free-standing and independent. In addition, the bank's claims against Mr. Dickerson were not actually litigated in the Kingreys' Chapter 11 proceeding and no one has asserted that addressing Mr. Dickerson's liability to the bank, either as a maker or guarantor, was necessary in order to adjudicate the relationship between the Kingreys and their creditors. Thus, Mr. Dickerson has not demonstrated that his obligations to the bank were or could have been adjudicated in the Kingreys' Chapter 11 proceeding.[14]

 A plan of reorganization, once confirmed, controls the debtor/creditor relationship thereafter. *In re Dickey*, 293 B.R. 360, 363 (Bankr.M.D.Pa.2003). Thus, until modified by a court, it must be given res judicata effect as to the rights and liabilities of both the debtor and the creditors. *In re Adkins*, 425 F.3d 296, 302 (6th Cir.2005); *In re Arnold*, 869 F.2d 240, 243 (4th Cir.1989); *In re Torres*, 336 B.R. 839, 842–43 (Bankr.M.D.Fla.2005). It would, however, stretch the doctrine of res judicata past its breaking point to give a confirmed plan of reorganization preclusive effect with regard to the claims involving third parties not addressed in the plan. Accordingly, the trial court did not err by refusing to hold that the Kingreys' plan of reorganization somehow prevents the bank from pursuing its claims against Mr. Dickerson.

## V.

 Mr. Dickerson also takes issue with the trial court's conclusion that the Kingreys' execution of the 2000 note did not extinguish his obligations under the 1996 note. The bank responds that the Kingreys' "reaffirmation"[15] of the 1996 note in 2000 did not discharge Mr. Dickerson's obligations under the 1996 note because the bank did not intend to relieve Mr. Dickerson of his obligations when it accepted the Kingreys' note in 2000. The facts of this case, however, permit only one reasonable conclusion—the bank accepted the Kingreys' 2000 note in full payment of the 1996 note and thereby discharged Mr. Dickerson's obligations to the bank, both as a maker and guarantor of the 1996 note.

The bank's position in this case rests on two irreconcilable contentions. The bank's first contention is that Mr. Dickerson's liability is premised on his failure to pay the outstanding balance of the 1996 note when it came due in April 2001. However, the bank also contends that the Kingreys' 2000 note was simply a renewal of the 1996 note. If the 2000 note was a renewal of the 1996 note, it is difficult to understand how there could have been a default of the 1996 note in 2001 because full payment of the 2000 renewal note was not due until

---

**14.** As a general matter, a bankruptcy court is precluded from releasing non-debtor guarantors. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1049–50 (5th Cir.1987). However, when such a release has been explicitly accepted and confirmed as an integral part of an unobjected to reorganization plan, the creditors cannot later assert that the bankruptcy court lacked subject matter jurisdiction to release the guarantor, and the order releasing the guarantor will be given res judicata effect. *In re North Alabama Anesthesiology Group, P.C.*, 154 B.R. 752, 758–61 (N.D.Ala.1993).

**15.** We find the bank's choice of the word "reaffirmation" curious. Reaffirmation is not a concept normally associated with notes and guaranties, and it is not found in Article 3 of the Uniform Commercial Code. While the Kingreys may have, in a sense, reaffirmed their debt to the bank in 2000, they did so by executing a note. It is the legal effect of the execution of the 2000 note that is at issue in this case.

November 2005.[16] The bank cannot have it both ways. If the 2000 note was truly a renewal of the 1996 note, the bank had no factual basis to argue that Mr. Dickerson, or G & S Implements or Mr. Kingrey for that matter, defaulted on the 1996 note by failing to pay it off in April 2001.

The inconsistencies in the bank's position have caused us to delve deeper into the facts to determine what was really going on between these parties. Apart from the bank's self-serving statements regarding its intentions at the time, the bankruptcy court's March 1999 order provides clear evidence regarding the purpose and effect of the Kingreys' 2000 note. This order undermines the bank's claims in this case.

The bankruptcy court's order required the Kingreys to "obtain[ ] refinancing" within nineteen months to pay the unpaid balance of the 1996 note "in full." In the context of bankruptcy proceedings, the word "refinancing" is a term of art. It connotes a transaction that substitutes one debt for another. *In re Biondo*, 180 F.3d 126, 132–33 (4th Cir.1999); *In re Kielur*, 323 B.R. 910, 915 (Bankr.W.D.Pa.2005); *In re Sheppard*, 299 B.R. 753, 761 (Bankr. E.D.Pa.2003). Accordingly, the Kingreys could not comply with the bankruptcy court's order by simply renewing the existing note. The bankruptcy court envisioned that they would replace this existing debt with a new one.

The significance of the choice of the term "refinancing" is buttressed by other language in the bankruptcy court's order. The order required the Kingreys to pay off the entire secured balance of their debt to the bank "in full" on or before the nineteenth month following the confirmation of their reorganization plan. Therefore, both the Kingreys and the bank were required

to pay off this debt in full by October 2000. Replacing the 1996 note with an entirely new note in 2000 would comply with the bankruptcy court's order because it would have the effect of paying off the 1996 note in full.

The 2000 note reflects the Kingreys' and the banks' compliance with the bankruptcy court's order. The order would not have permitted the Kingreys and the bank to simply renew or "reaffirm" the 1996 note. It required the 1996 note to be refinanced and paid in full. The Kingreys obtained the "refinancing" ordered by the court, and this refinancing was used by the bank to pay the outstanding balance of the 1996 note "in full." Any other interpretation of the 2000 transaction between the bank and the Kingreys would require us to find that the Kingreys and the bank failed to comply with the bankruptcy court's order. We decline to make such a finding because we presume that parties such as the Kingreys and the bank would never knowingly fail to comply with a valid court order.

■ In light of our decision that the Kingreys' 2000 note is a new indebtedness that paid off the 1996 note in full, no conclusion can be drawn other than Mr. Dickerson is no longer liable to the bank under the 1996 note. As a maker, he has been discharged because the note has been paid in full. Tenn.Code Ann. § 47–3–602. By the same token, he has no liability as a guarantor because under the common law, the liability of a guarantor is discharged when the underlying debt has been paid in full. *Ponderosa Paint Mfg., Inc. v. Yack*, 125 Idaho 310, 870 P.2d 663, 667–68 (1994); *Ulrich v. Ulrich*, 603 So.2d 78, 79 n. 1 (Fla.Dist.Ct.App.1992); *Marble Emporium, Inc. v. Vuksanovic*, 339 Ill.App.3d 84, 273 Ill.Dec. 915, 790 N.E.2d 57, 64 (2003);

16. The bank's 2003 complaint does not assert or claim that any actions or inactions by the Kingreys with regard to the 2000 note caused the default of the 1996 note.

Restatement (Third) of Suretyship and Guaranty § 19(a) & cmt. a, at 82 (1996). Accordingly, we have concluded that the trial court erred as a matter of law by concluding that Mr. Dickerson remained liable to the bank, either as a maker or a guarantor, on the 1996 note.[17]

## VI.

■ As a final issue, Mr. Dickerson insists that the trial court erred by failing to find that he was not liable to the bank under his guaranty because the bank had already received more payments than the maximum amount of his guaranty. While we find little merit in this argument,[18] we need not pursue it further in light of our conclusion in Section V that the Kingreys' 2000 note discharged Mr. Dickerson's liability to the bank as a maker and guarantor of the 1996 note.

## VII.

We reverse the judgment and remand the case to the trial court with directions to enter an order dismissing the bank's claims against Mr. Dickerson with prejudice. We tax the costs of this appeal to Cumberland Bank for which execution, if necessary, may issue.

17. Both parties' briefs contain discussions regarding the application of *Bank of Waynesboro v. Ghosh,* 576 S.W.2d 759 (Tenn.1979) to this case. Assuming the continuing viability of the holding in that case, it can be of no assistance to Mr. Dickerson because he is not a "noncommercial guarantor." This case does not present a proper vehicle for us to consider whether *Bank of Waynesboro v. Ghosh* remains good law with regard to transactions covered by Article III of the Uniform Commercial Code in light of Tenn.Code Ann. § 47–3–605(i) which permits guarantors to waive the suretyship defenses discussed in the *Bank of Waynesboro v. Ghosh* opinion.

18. The guaranty Mr. Dickerson signed in 1996 specifically states that "no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness." Any interest payments the Kingreys may have made do not affect Mr. Dickerson's liability under his guaranty, and the record contains no evidence that the remaining balance on the note consisted of advances made to G & S Implement after Mr. Dickerson revoked his guaranty in December 1996. .