# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 27, 2012 Session

## JAMES LUEKING, et al., v. CAMBRIDGE RESOURCES, INC., et al.

### Appeal from the Circuit Court for Scott County
### No. 7205    Hon. John McAfee, Judge

### No. E2011-02393-COA-R3-CV-FILED-DECEMBER 21, 2012

Plaintiffs filed an action in the Circuit Court for a declaratory judgment and damages against defendants. Plaintiffs are property owners and lessors to defendants/appellees, who are lessees and operators of an oil and gas production unit. The Trial Court bifurcated the issues raised in the Complaint, and a trial was held before a jury. The jury found in favor of plaintiffs, determining that there was an oral lease "expanding the said storage yard from approximately 1/3 acre to approximately 2 and ½ acres." Based upon the jury's verdict, the Trial Court found there was proof of a lease and that plaintiffs were entitled to rentals of $1,000.00 per month from October 1994 through November 2010, totaling $194,000.00 with pre-judgment interest of $243,043.04. The Trial Court, in its discretion, referred the remaining issues to the Tennessee Oil and Gas Board for resolution and entered final Judgment. Plaintiffs appealed and we affirm the Trial Court Judgment, as modified.

### Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Johnny V. Dunaway, LaFollette, Tennessee, for the appellants, James Lueking and Jim Reed.

John R. Wingo, Nashville, Tennessee, for the appellees, Cambridge Resources, Inc., PDC Resources, Inc., Oneida Gas, Inc., and Lick Branch Unit Joint Venture.

## OPINION

## Background

This appeal arises from a dispute over an oil and gas lease. The wells at issue are located in Scott County, and suit was originally brought by plaintiffs/appellants Jim Reed and James Lueking[1], (plaintiffs or appellants) property owners and lessors, on March 19, 1997. Reed and Lueking voluntarily dismissed the Chancery Court suit. They filed a similar suit on February 16, 2007 in the Circuit Court. The suit was for declaratory judgment and damages against defendants/appellees, Cambridge Resources, Inc., PDC Resources Inc., Oneida Gas, Inc. and Lick Branch Unit Joint Venture (collectively, LBU, defendants or appellees), who are lessees and operators of an oil and gas production unit (the Lick Branch Unit or Unit).

The oil and gas leases at issue were originally executed by plaintiffs' predecessors in title and defendants' predecessors in title in 1965 and 1967. Reed and Lueking sought a declaratory judgment that the lease was void because defendants failed to commercially produce oil and gas for a period exceeding six months. They sought damages for trespass associated with defendants' oil production and gas storage on their property after September 1, 1995. They also sought damages for the nuisance of loud noise caused by defendants' compressor on the property. Plaintiffs further alleged that they had entered into an oral lease of a certain portion of the surface area with the defendants and that defendants had breached that lease by not paying the agreed upon rent.

Defendants filed an Answer and Counter Complaint, and generally denied the allegations in the Complaint and asserted that other property owners, who had oil and gas leases and were part of the Lick Branch Unit were indispensable parties to the action. The Counter Complaint sought compensatory and punitive damages, claiming that Reed and Lueking intentionally interfered with defendants' oil and gas operations on the Lick Branch Unit and the true purpose of the suit was to harass and defame them.

Various motions were filed by the defendants, but were overruled.

The Trial Court bifurcated the issues raised in the Complaint and the issue of whether there was commercial production of oil and gas during a six month period between December 1994 and September 1995 was tried by jury on December 16, 17 and 19, 2008. The jury found the defendants did not produce oil or gas in the Lick Branch Unit between

---

[1] Jim Reed sued individually and as attorney in fact for Jean Reed, Freda Reed Davis, Charles Bruce Reed, James Russell Reed, Deborah Reed Brandon and Michael Allen Reed.

December 1994 and September 1995. Plaintiffs filed a motion for the Court to enter an Order declaring the leases terminated based on the jury's finding. The Trial Court entered an Order declaring that the oil and gas lease between the parties was terminated for failure to produce oil and gas effective September 19, 1995, based upon the jury's finding.

Subsequently, the Trial Court entered a corrected Order, denying defendants' motions to dismiss for lack of subject matter jurisdiction, motion for new trial and motion for judgment notwithstanding the verdict. The Court also granted defendants permission to take an interlocutory appeal, which the appellate Court denied.

The Trial Court, after denying a Motion for lack of jurisdiction, stated in the Order that at the hearing it determined *sua sponte* that the issue of trespass, which resulted from defendants continuing to produce after the oil and gas leases became void, and the damages that flowed therefrom shall not be submitted to the jury. The Court invoked its declaratory judgment powers and declared that plaintiffs are entitled to receive 1/8 of the gross revenues defendants received from gas storage rentals."

A trial before a jury was conducted on November 3rd and 4th 2010, and the only issue the Court allowed the jury to determine was whether or not there was a contract between plaintiffs and defendants for lease of a surface area of approximately 2 ½ acres of plaintiffs' property in the Lick Branch Unit. The jury found in favor of plaintiffs, determining that there was an oral lease "expanding the said storage yard from approximately 1/3 acre to approximately 2 and ½ acres." Based upon the jury's verdict, the Trial Court found that there was proof of a lease and that plaintiffs were entitled to rentals of $1,000.00 per month from October 1994 through November 2010, totaling $194,000.00 with pre-judgment interest of $242,043.04. During the proceedings the Trial Court first ruled that plaintiffs were barred from prosecuting the action to recover damages for trespass for producing oil and gas after the oil and gas lease had expired based on a finding that the other parties to the Unit Agreement had not been joined and that they were indispensable parties. However, the Trial Court did rule that plaintiffs could proceed to recover 1/8 of the gross rentals defendants had generated by storing gas under plaintiffs' property. Later, the Trial Court reversed itself on this issue, *sua sponte*, and denied plaintiffs the ability to present the gas storage issue to the jury. The Court held this issue in abeyance, and stated in its oral ruling and in its written judgment that it believed the gas storage issue was within the purview of the jurisdiction of the OGB and that the Unit Agreement controlled this issue. The Court also prohibited plaintiffs from presenting the jury with the issue of whether they were entitled to damages for nuisance as it found that this issue lies exclusively with the OGB. Plaintiffs took a non-suit on the issue of damages to the surface of the real property. The final judgment was entered February 8, 2011. Plaintiffs filed a Notice of Appeal.

Plaintiffs took a non-suit on the issue of damages to the surface of real property, and these issues are raised on appeal:

A.      Did the Trial Court err, in barring Appellants from presenting to the jury the issue of damages resulting from trespass, where Plaintiff sought damages for Appellees' continued production of oil and gas, after the leases were void?

B.      Did the Trial Court err, in dismissing Appellants' claim for damages resulting from trespass, where Appellees received rental payments for storage of gas under Appellants' property, on the basis that the Tennessee Oil and Gas Board possessed exclusive jurisdiction over that issue?

C.      Did the Trial Court err, in dismissing Appellants' claim of damages for nuisance from Appellees' operation of excessively loud compressors on Plaintiffs' property, on the basis that the Tennessee Oil and Gas Board possessed exclusive jurisdiction over that issue?

D       Did the Trial Court err in instructing the 2008 jury on the definition of commercial production under Tenn. Code Ann. § 66-7-103?

E.      Did the Trial Court err in awarding Plaintiff Jim Reed damages for fifteen years of rent under a purported oral lease between Reed and LBU? (Issue raised by appellee).

Appellate review of a trial court's findings of fact is *de novo* upon the record with a presumption of the correctness of the findings. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). The presumption of correctness can be overcome only if the preponderance of the evidence is against the trial court's findings of fact. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995). The presumption of correctness applies only to a trial court's findings of fact, not to conclusions of law; accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. Tenn. R. App. P. 13(d); *Cumberland Bank v. G & S Implement Co., Inc.*, 211 S.W.3d 223, 228 (Tenn. App. 2006); *In re: Estate of Baker v. King*, 207 S.W.3d 254, 263 (Tenn. App. 2006).

Our review of decisions that lie within the discretion of a trial court are reviewed for abuse of discretion. See, e.g., *Parks v. Mid-Atlantic Fin. Co.*, 343 S.W.3d 792, 799 (Tenn. Ct. App. 2011). A trial court's decision whether or not to defer to an administrative body on questions within the competence of that agency is discretionary. *Freels v. Northrup*, 678 S.W.2d 55, 58 (Tenn. 1984). *See also, Heritage Acres, Ltd. v. Reece*, 1989 WL 70747 at *

2 (Tenn. Ct. App. June 30, 1989). The trial court deferred to the OGB on plaintiffs' claim for trespass damages based on LBU's injection and storage of gas at the Unit, and plaintiffs' claim for nuisance damages based on LBU's use of a compressor to inject the gas.

As for plaintiffs' third claim, for trespass arising from LBU's post-1995 oil and gas operations, the Trial Court clarified its reasoning for its order that plaintiffs were barred from presenting this issue to the jury during discussions in open court with counsel during the November 2010 hearing. The Trial Court stated that even if all the parties to the Unit Agreement were present as parties, jurisdiction of this issue would lie with the OGB. Later in the same hearing, the Trial Court, on the same issue, stated that "[I]t's my opinion that all this stuff in reference to this unit agreement should be before, has exclusive jurisdiction with the Oil and Gas Board, period." Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001). The abuse of discretion standard does not permit an appellate court to substitute its judgment for that of the trial court. *Id.*

The standard of review of a jury verdict is well settled and is set out in Tennessee Rule of Appellate Procedure 13(d), which provides, "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." The Tennessee Supreme Court, in *Whaley v. Perkins,* 197 S.W.3d 665 (Tenn.2006) addressed the approach an appellate court should take when determining whether there is material evidence to support a jury verdict as follows:

> [A]n appellate court shall : (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all countervailing evidence. Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies. If the record contains "any material evidence to support the verdict, the jury's findings must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury."

*Whaley v. Perkins,* at 671 (citations omitted). The appellate court does not make credibility determinations of the witnesses. *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980).

The three issues raised by appellant can be considered together by the Court as they all deal with the Trial Court's dismissal of claims that it found fell within the purview of the OGB. Based on the jury's finding that the Bertram and Reed Leases were terminated in 1995 for lack of production, the Plaintiffs asserted claims for trespass, based on LBU's injection and underground storage of natural gas at the Unit; nuisance, based on LBU's use of a

compressor to inject the gas; and trespass, based on LBU's continued production of oil and gas at the Unit after 1995. Plaintiffs argue that the Trial Court was in error when it dismissed these claims when it found that they should be decided by the OGB. LBU contends that the plaintiffs' position is without merit because the Unit Agreement authorizes LBU to engage in each of these activities and the OGB has authority to interpret the Unit Agreement. The Trial Court had decided that it was within the OGB's jurisdiction to decide if the Unit Agreement authorized LBU to engage in the complained of activities, and deferred the matter to the OGB. The Trial Court provided its reasons, stating that any attack or anything in reference to the Unit Agreement had been vested by the General Assembly in the OGB. Further, Tenn. Code Ann. 60-1-601 *et seq.* specifically vests the OGB with the power to compensate landowners for damages caused by oil and gas operators.

We conclude that the Trial Court's dismissal of these three claims and its deferral to the OGB was not an abuse of discretion. The Tennessee Supreme Court first discussed the jurisdiction of the OGB in *Freels*, 678 S.W.2d 55. That case arose from a dispute over the ownership of mineral rights and the plaintiff's right to participate in an oil well drilling unit. Suit was filed in the Chancery Court for Morgan County, and plaintiffs alleged that they owned the mineral rights in a disputed tract and that their interest was in such close proximity to the defendants' well that unitization was required under T.C.A. § 60–1–101 *et seq.*, and the Rules of the OGB. The *Freels* plaintiffs also claimed that the Board had approved such unitization but that oil had been collected from the well without any accounting to the plaintiffs. The trial court in *Freels* awarded the mineral rights to plaintiffs and awarded a certain percentage of oil royalties received by defendants to plaintiffs. *Id.* at 56. The Court of Appeals held that the determination of unit participation percentages is within the particular expertise of the OGB. Thus, the Supreme Court was asked to determine whether the OGB had exclusive jurisdiction to determine the percentage of participation the plaintiffs had in an oil well drilling unit. *Id.* Defendants argued that only the OGB has the authority, pursuant to T.C.A. § 60–1–202, to determine unit participation. The Court reviewed the statutory powers and duties of the OGB as set out in Tenn. Code .Ann. § 60–1–202, which provides in part:

(a) The Board shall have jurisdiction and authority ...

(4) To make rules, regulations, and orders for the following purposes:


* * * *

(I) To identify ownership of oil and gas wells, producing leases, refineries, tanks, structures, and all storage and transportation equipment and facilities; ...

(M) To provide for the forced integration of separately owned tracts and other property ownership into drilling and production units....

From the statutory language the *Freels* Court concluded that OGB has the authority and jurisdiction to determine the unit participation in the oil well at issue. However, the Court rejected the Court of Appeals finding that the Board has exclusive jurisdiction to make that determination and found that the trial court was acting within its authority and jurisdiction in making the unit participation determination. *Id.* at 57.

The *Freels* Court went on to say that "[i]n deciding whether to defer to the administrative agency, courts generally make two inquiries: (1) will deferral be conducive toward uniformity of decision between courts and the agency, and (2) will deferral make possible the utilization of pertinent agency expertise. *Id.* The Supreme Court found that neither of these considerations were present, and concluded that the trial court was not required to defer to the OGB. The Court went on to declare that "the doctrine of primary jurisdiction is discretionary and a court is never required to defer to agency expertise. *Id*. at 59 (citing *Great Northern Ry. Co. v. Merchants Elevator Co.*259 U.S. 285, 42 S. Ct. 477, 66 L. Ed. 943 (1922*); Kerr v. Dept. of Game, State of Washington,* 14 Wash. App. 427, 542 P.2d 467 (1975)).

Accordingly, the Court in the instant case had the discretion to maintain jurisdiction over the issues arising from the Unit Agreement or to defer the issues to the Oil & Gas Board. We hold the Trial Court did not abuse its discretion. The Board has "special competence" with respect to matters pertaining to the drilling and production of oil and natural gas in Tennessee, especially when the case involves questions about a unitized formation, which the Board approved more than thirty years ago and requires a determination of the scope of the Board's power and the interpretation of the Board's Order approving the Unit and the Unit Agreement. The Board has expertise regarding the oil and gas production at issue here, including the injection of gas as an enhancement to oil production, the subterranean storage of gas, the use of compressors for gas injection and the usual and accepted noise associated with the production of oil and gas. The Trial Court's deference to the Board also negates the possibility of the Court and the Board issuing conflicting rulings. For these reasons, we conclude that "reasonable minds can disagree as to the propriety of the decision" made by the Trial Court to defer to the Board and conclude the deferral was appropriate.

LBU contends the trial court erred in instructing the jury at the December 2008 trial on how to assess "commercial production" under Tenn. Code Ann. § 66-7-103. Tenn. Code Ann. § 66-7-103 (a)(1). This section provides that:

Any lease of oil or natural gas rights or any other conveyance of any kind separating such rights from the freehold estate of land shall expire at the end of ten (10) years from the date executed, unless, at the end of such ten (10) years, natural gas or oil is being produced from such land for commercial purposes. If, at any time after the ten-year period, **commercial production of oil or natural gas is terminated for a period of six (6) months, all such rights shall revert to the owner of the estate** out of which the leasehold estate was carved. No assignment or agreement to waive the provisions of this subsection (a) shall be valid or enforceable.

(emphasis added).

The Verdict Form in the 2008 jury trial stated:

<u>VERDICT FORM</u>

(1)     Did the defendants produce oil in the Lick Branch Unit between December, 1994 and September, 1995?

YES _____          NO __x___

(2)     Did the defendants produce gas in the Lick Branch Unit between December, 1994 and September, 1995?

YES _____          NO ___x

NOTE:     If your answer to both question 1 and 2 are "no", sign the verdict form.  If you answer to either question 1 or 2 is "yes", proceed to question 3.

(3)     If there was production of either gas or oil in the Lick Branch Unit between December, 1994 and September, 1995, was the production in paying quantities?

YES ____          NO ____

NOTE:     Paying quantities mean that the sale of the oil and gas would yield a reasonable profit above the expenses of production and transportation, including, but not limited to, labor, trucking, transportation expense, replacement and repair of equipment, taxes, license and permit fees, the operator's time on the lease, advertising, and daily expenses of the defendants in producing oil.

-8-

In the record is the "Special Verdict Form" that states: "Did the Defendants, between December, 1994 and September, 1995, act as reasonably prudent operators at Lick Branch Unit by initiating and completing their enhanced oil recovery project. The exhibit was marked for identification only.

LBU contends the jury instructions provided to the jury were incorrect and that the jury should have been instructed to engage in a two-part inquiry. Accordingly, they submit that the error in instructing the jury on this issue led to the erroneous ruling that the Bertram and Reed leases had terminated.

In considering this issue for LBU, neither the jury instructions provided to the jury by the Trial Court at the 2008 trial nor LBU's proposed jury instructions, if any, are in the appellate record and the scope of our factual review is limited to the contents of the appellate record. *BEP Services, Inc. v. CareFirst Found., Inc.*, W2006-02059-COA-R3-CV, 2007 WL 2376331 at * 4 n. 1(Tenn. Ct. App. Aug. 21, 2007)(citing *Richmond v. Richmond,* 690 S.W.2d 534, 535 (Tenn. Ct. App.1985)). Accordingly, we are not informed what instruction was requested by LBU or what instructions were actually delivered to the jury by the Trial Court. Accordingly, we cannot find that a jury instruction was improper without the opportunity to review the objected to instruction. *Flightless-N-Bird Farm, Inc. v. Dughman*, 01A01-9803-CV-00126, 1999 WL 22376 (Tenn. Ct. App. Jan. 21, 1999)(citing Tenn. R. Civ. P. 51.02; *Rule v. Empire Gas Corp.,* 563 S.W.2d 551, 554 (Tenn. 1978). LBU had the responsibility to prepare a fair, accurate, and complete record on appeal. Accordingly, on the state of this record, we must presume that the Trial Court gave appropriate instructions to the jury.

Next, LBU contends that the Trial Court erred when it awarded damages to plaintiffs pursuant to the oral lease the jury found between Mr. Reed and LBU. Following the November 2010 trial the jury found that Mr. Reed and Mr. Gamblin, acting for LBU, had entered into an oral lease wherein LBU leased two and one half acres of Reed's property for $1,000.00 a month. Based on this jury finding, the Trial Court awarded Reed a judgment of $436,043.04, which included $194,000.00 in unpaid rent and $242,043.04 in interest. LBU contends that the finding of an oral lease and resulting judgment cannot stand as a matter of law because, first, the Unit Agreement already granted LBU an easement to engage in the activities for which it purportedly leased the land. Thus LBU received no benefit under the alleged oral lease. Second, the undisputed testimony of Mr. Reed and Mr. Gamblin demonstrates that there was no meeting of the minds sufficient to form a lease. Third, any oral lease of the property is barred by the statute of frauds.

LBU's first argument on the oral lease issue is that the Unit Agreement, was still in place, and which specifically states that LBU, as the Working Interest Owner of the Unit, had

an easement to use any and all necessary surface land within the Unit to conduct "Unit Operations". Unit Operations are defined as "all operations conducted for or on account of the development of the Unitized Formation for the production of Unitized Substances."

LBU argues that there was neither a need nor an obligation for LBU to enter into the alleged oral lease or to pay rent for the use of property as long as the Unit Agreement was in effect.

We do not address the merits of LBU's legal argument on this issue because the specific language of paragraph 10.1 of Unit Agreement does not support the argument that the Unit Agreement already granted LBU the right to place a compressor or office trailer on the Unit property. Paragraph 10.1, which pertains to the grant of easements, specifically states that "nothing herein shall be constructed as leasing or otherwise conveying to working-interest owner a site for a water, gas injection, processing or otherwise plant, or campsite." The evidence showed that the compressor LBU placed on the 2 ½ acres and that Reed claims was subject to the oral lease, pertains to the injection of gas into the Unit, thus paragraph 10.01 of the Unit Agreement precludes the place of such a compressor from the grant of easements. Similarly, the placement of an office/trailer on the 2 ½ acres would equate to the placement of a campsite, another activity specifically precluded from the grant of easements in paragraph 10.01 of the Unit Agreement. Accordingly, LBU's argument on this issue is without merit.

LBU's second argument as to why the oral lease contract should not have gone to the jury is that there was no "meeting of the minds" between the parties. It is axiomatic that a contract "must result from a meeting of the minds of the parties in mutual assent to the terms. *Staubach Retail Services-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). Mr. Reed stated that Mr. Gamblin orally agreed to pay $1,000 a month for a lease of the 2 ½ acre area of the Unit in 1994. LBU states in its brief that Mr. Reed also testified that he believed Mr. Gamblin was lying when he agreed to the terms of the lease. Mr. Gamblin, on the other hand, denied agreeing to the terms of the lease. LBU argues that if Mr. Gamblin did not orally agree to the terms of the lease, as he testified, then there was no meeting of the minds and no contract. However, if Mr. Reed is to be believed and Mr. Gamblin did agree to the terms but he was lying when he did so, then there was still no meeting of the minds and no contract. The problem with this argument is that Mr. Reed testified that he believed Mr. Gamblin when he agreed to the terms of the lease in 1994 but, in retrospect, at the time of the trial he believed Mr. Gamblin had been lying. Thus, LBU's reasoning in this argument is flawed and without merit.

LBU also argues that the actions of the parties following the alleged formation of the oral contract also demonstrate there was never a meeting of the minds. LBU points to Mr.

Reed's presentation of two written leases to Mr. Gamblin in 1995 and his certified letter to Mr. Gamblin in 1996 regarding the need for a signed lease agreement. However, as appellants point out, there was other evidence presented at trial to support Mr. Reed's position that there was an oral lease. In the 1996 correspondence to Mr. Gamblin, Mr. Reed wrote "[i]t has been two years since you began installing the compressor and six months before that when your rent was due on the fenced storage yard." He goes on to state "my family is not willing to let the present situation remain as it is without compensation and without a written agreement." These statements can be interpreted to show that Mr. Reed had expected compensation well before 1996 and that when Mr. Gamblin refused to pay, Mr. Reed attempted to have the oral agreement memorialized in a written lease agreement.

Although LBU frames this issue on appeal as an error of the Trial Court in awarding damages to Mr. Reed pursuant to the oral lease, essentially, it is an attack on the jury's finding of fact that an oral lease had been entered into between Reed and Gamblin. As such, our standard of review is whether there was material evidence to support the jury verdict. We find that there was material evidence in the record to support the jury's verdict.

LBU's last argument on the issue of the oral lease is based on Tennessee's statute of frauds, Tenn. Code Ann. § 29-2-101 and/or Tenn. Code Ann. § 66-7-101. Upon the jury's finding that an oral lease of the 2 ½ acres for $1,000 a month was entered into by the parties in 1994, the Trial Court awarded Mr. Reed back rent and interest from 1995 until the time of trial in December 2010. LBU contends that this award violated the statute of frauds, Tenn. Code Ann. § 29-2-101 and/or Tenn. Code Ann. § 66-7-101. LBU contends that as the final judgment awarding Mr. Reed lease payments from 1995 to 2010, a fifteen year period, clearly contravenes the statute of frauds, the judgment should be overturned or remanded to the Trial Court to amend the judgment to limit the term of the oral lease to either one or three years, resulting in damages of $12,000 or $36,000 plus interest.

Tenn. Code Ann. § 29-2-101(a)(4) provides: "(a) No action shall be brought: (4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year." Tenn. Code Ann. § 29-2-101 is the "statute of frauds" and the general rule is that the affirmative defense of the "statute of frauds" must be pled as an affirmative defense in defendant's answer or it is waived. Tenn. R. Civ. P. 8.03; *See Liberty Mut. Ins. Co. v. Friendship Home Health Agency, LLC,* M2007-02787-COA-R3-CV, 2009 WL 736659 at * 7 (Tenn. Ct. App. Mar. 19, 2009)(The statute of frauds is expressly enumerated in Tennessee Rule of Civil Procedure 8.03 as an affirmative defense which must be timely raised or is deemed waived). As LBU did not raise the statute of frauds as an affirmative defense in its answer or in an amended answer, this defense was waived and will not be considered on appeal.

However, there is no rule of waiver in connection with Tenn. Code Ann. § 66-7-101, which provides that [l]eases for more than three (3) years shall be in writing, and, to be valid against any person other than the lessor, the lessor's heirs and devisees, and persons having actual notice thereof, shall be proved and registered as provided in chapters 22-24 of this title. LBU raised this issue in its motion for directed verdict, thus it was preserved for appeal. We conclude that the oral lease at issue, was limited to a three year term pursuant to Tenn. Code Ann. § 66-7-101.[2]  On this issue the cause is remanded to the Trial Court to modify the judgment down to $36,000 plus interest.

In conclusion, the Trial Court did not abuse its discretion when it dismissed the trespass and nuisance claims in deference to the OGB, but the Trial Court erroneously awarded damages pursuant to the oral lease for a period of fifteen years. Under the terms of the statute, the lease recovery is limited to three years pursuant to Tenn. Code Ann. § 66-7-101. The cause is remanded with the cost of the appeal assessed one-half to plaintiffs and one-half to defendants.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[2]Leases for more than three (3) years shall be in writing, and, to be valid against any person other than the lessor, the lessor's heirs and devisees, and persons having actual notice thereof, shall be proved and registered as provided in chapters 22-24 of this title. Tenn. Code Ann. § 66-7-101.